[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 1484
The court has before it two matters involving the same defendant and arising out of the same circumstances. They have been consolidated for purposes of trial. Interior Technologies Inc. (ITI), one of the plaintiffs, has brought a three-count complaint against the defendant, Baker Properties Limited Partnership (Baker), the first count seeking to foreclose a mechanic's lien, the second count alleges a breach of contract, while the third count is a claim for unjust enrichment. The second complaint was filed by Allstate Erectors, Inc. (Allstate), a subcontractor of ITI. The complaint lies in two counts, the first being to foreclose a mechanic's lien and the second count a claim for unjust enrichment.
Baker has responded to both complaints, the pleadings are closed and the matter has come before the undersigned for disposition.
ITI entered into a contract with Baker to install a new metal roof over an old metal roof on property owned by Baker and located at 60 Marsh Hill Road in the Town of Orange. In addition, the contract called for the construction of a truck wash facility and the erection of a canopy over the loading dock. The dispute concerns only the metal roof and does not relate to the other two items.
Allstate, acting as subcontractor of ITI, performed the actual labor involved in the installation of the metal roof. The testimony indicated that neither party had little if any experience in installing a metal roof over an old one.
The materials for the project were fabricated by American Builders, Inc. (ABC) under a contract with ITI. ABC filed its own mechanic's lien which has been dismissed as being untimely.
The court will first consider the validity of both mechanic's liens. The mechanic's lien filed by ITI was recorded on the Land Records of the Town of Orange on March 6, 1995, while the lien of Allstate was recorded on January 18, 1995.
In order for a mechanic's lien to be valid, the person performing the services or furnishing the materials must, within 90 days after ceasing to do so, lodge with the Town Clerk wherein the building the subject of such services or furnishing of CT Page 1485 materials is located, a certificate in writing, describing the premises, the amount claimed as a lien, the name or names of the person or persons against whom the lien is being filed, and the date of the commencement of the performance of the services or furnishing of materials. It must also be stated that the amount claimed is justly due. In addition, the certificate of lien must be subscribed and sworn to by the claimant and, within the same time or prior to but not later than 30 days after lodging the certificate, serve a true and attested copy on the owner. See Connecticut General Statutes § 49-34.
The only dispute centers around whether the liens were recorded within 90 days after the services or materials were furnished or completed. The Allstate lien was recorded on January 18, 1995 and the lien of ITI was recorded on March 6, 1995. Based on these recordings, insofar as Allstate is concerned, work would have had to be completed by October 20, 1994 and the work performed by ITI completed by December 8, 1994.
The question here is one of substantial completion. "The rule is one to be applied fairly to both the lienor and the owner. If, after the work is substantially done, the claimant for material furnished or services rendered shall not unreasonably delay the completion of the work, the date of beginning of the sixty-day period will be taken as the date when the work was substantially done. No trivial or inconsequential service or work done after the substantial completion of the building will extend the time for claiming the lien, or revive an expired lien when an unreasonable period has elapsed since the substantial completion." The Martin Tire Rubber Co. v. The Kelly Tire Rubber Co., 99 Conn. 396, 399-400.
The testimony of Allstate's president, Roland Deschaime, indicates that he was last on the roof on December 8, 1994 in the company of a representative of Baker. The only work performed on that date was the repair of a pinhole. Furthermore, the testimony discloses that the roof was finished before Christmas and that he was called back in January to correct certain conditions relating to leakage. The last time his firm performed any work of any substance was in March of 1994. There are no invoices after that. There were approximately four visits to the site after March 1994. From January 1994 through March of 1994 an appreciable amount of repair work was done. There is no evidence of any substantial work being done thereafter. CT Page 1486
The mechanic's lien was recorded on the Orange Land Records on January 18, 1994, a date that is far beyond the 90-day period set forth in § 49-34 of the Connecticut General Statutes.
The court finds that the filing of the mechanic's lien by Allstate Erectors is untimely and therefore void.
ITI also claims that the last date on which work was completed was December 8, 1994. Again, the witness could not testify as to the nature of the work performed. There was no invoice presented to Baker for the work done. In fact, even though ITI claims that work was done during October and November, they have presented no invoice for payment leading the court to believe that any work done was inconsequential. In fact, the last invoice presented for work performed is July 1994. There is no evidence substantiating any work performed during the Fall of 1994. ITI has failed to sustain its burden of proof regarding the timeliness of its lien. The court finds that the mechanic's lien filed by ITI is untimely and therefore void.
Plaintiff ITI's second count alleges a breach of contract. Article II, Section 1a and b of the contract states in pertinent part:
 "A. In General: Complete all roofing, metal building systems canopy and metal panel work listed in several parts of the Contract Documents illustrated on attached Schedule C included herein.
 B. Comply with all provisions of the contract including contract items on attached schedules `C-1' and C-2.'"
Section "C-2" of the Schedule is entitled "Scope of Work."
Schedule "C-2-1" states in relevant part that:
 "The subcontractor shall furnish and install a new standing seam roof over the existing standing seam roof. . . . The subcontractor shall provide a complete roof system that is weather tight and maintains a U.L. 90 wind uplift rating."
Schedule "C-2-2" recites the following:
"The subcontractor shall install structural support purlins over the existing roof. . . . Fasten the new purlins directly CT Page 1487 to the existing purlins. A sliding clip shall be used to connect the standing seam panels to the purlins. All work shall be in accordance with the manufacturer's instructions."
Schedule "C-2", paragraph 3 states that:
 "The subcontractors shall furnish and install standing seam panels that will provide a 20 year weather tight warranty. Provide a full executed original 20 year manufacturer's warranty to Baker Properties at the time of substantial completion and/or acceptance of roof installation by Baker Properties. . . . The manufacturer shall inspect and accept the roofing system prior to substantial completion of the project."
Paragraph 4 of Schedule "C-2" states:
 "The subcontractor shall furnish and install a new roof support system and new roofing system over the two existing penthouses. New gutters and down spouts shall be provided to drain water from the penthouse to the building roof. . . . The subcontractor shall furnish and install a drainage system around the penthouses. No standing water shall be permitted at the penthouses. The subcontractor shall be responsible to install the roofing system at the perimeter of the roof penthouses according to manufacturer's recommendations so that there is always positive drainage away from the penthouse areas."
Paragraph 10 of "C-2" reads as follows:
 "The subcontractor shall furnish and install all flashing, caulking and sealant required to flash around the existing rooftop equipment. All water must flow around the HVAC equipment. No standing water will be permitted. The subcontractor shall have a manufacturer representative review the rooftop equipment and provide details of how each piece of equipment needs to be flashed to obtain the required 20 year warranty."
Except for the original ridge cap, there is no evidence that any of the materials furnished by ABC were inadequate or defective in any way. That the installation is defective is obvious from the vast number of leaks that occurred. Most of the leaks occurred in the area of the penthouse and heavy equipment CT Page 1488 such as the HVAC units. While ITI may have wished to have raised these units, the scope of the work, Schedule "C-2" did not call for such treatment. The specifications called for a weather tight roof with a 20 year warranty. The roof as constructed was not weather tight and the 20 year warranty was never given. The court finds for the defendant Baker on the second count of ITI's complaint.
ITI's third count and Allstate's second count are based on the doctrine of unjust enrichment. "The right of recovery for unjust enrichment is equitable, `its basis being that in a given situation it is contrary to equity and good conscience for the defendant to retain benefit which has come to him at the expense of the plaintiff.'" National CSS Inc., v. Stamford,195 Conn. 587, 597; Schleicher v. Schleicher, 120 Conn. 528, 534,182 A.2d 162 (1935).
"`Unjust enrichment is a legal doctrine to be applied when no remedy is available pursuant to a contract. 55 Williston Contracts (Rev. Ed.) S. 1479. In order for the plaintiff to recover under the doctrine it must be shown that the defendants were benefitted [benefited], that the benefit was unjust and that it was not paid for by the defendants and that the failure of payment operated to the detriment of the plaintiff.'" Burns v. Koellmer,11 Conn. App. 375, 383; Monarch Accounting Supplies, Inc. v.Prezioso, 170 Conn. 659, 665-66, 368 A.2d 6 (1976); ProvidenceElectric co. v. Sutton Place Inc., 161 Conn. 242, 246, 287 a.2d 379 (1971).
Unjust enrichment is merely another form of the equitable remedy of restitution. The principle underlying the doctrine is that one should not be allowed to enrich oneself at the expense of another and should be required to make restitution for the benefit received.
A remedy in restitution is governed by § 372(2) of the Second Restatement of Contracts (1981) which provides "[t]he injured party has no right to restitution if he has performed all of his duties under the contract and no performance by the other party remains due other than payment of a definite sum of money for that performance."
Our Supreme Court, quoting from the case of Clark-FitzpatrickInc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388-90,516 N.E.2d 190, 521 N.Y.S.2d 653 (1987), makes the following quote: "It is CT Page 1489 impermissible . . . to seek damages in an action sounding in quasi-contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed and the scope of which clearly covers the dispute between the parties. . . ."
The plaintiff, ITI, has throughout the trial alleged that it has fully performed under the terms of its contract with Baker. The existence of this agreement is undisputed and the scope of said contract clearly covers the dispute herein. In addition, Baker claims that it has fully compensated ITI for any benefit which has been conferred upon them.
Based upon these conclusions, the plaintiff ITI cannot recover under any theory of quasi-contract but is bound by the terms of the contract which it entered into with Baker.
As far as Allstate's claim is concerned, Baker has paid to ITI prior to the commencement of this action the sum of $253,038.00. From that sum, ITI has paid $10,000.00 to Allstate and $64,442.27 to ABC. The underlying contract with Allstate called for the payment of $85,000.00 and for ABC the payment of $167,610.14. ITI retained for itself the sum of $118,167.87.
Allstate as well as ITI is not entitled to recover under the doctrine of unjust enrichment. The evidence discloses that Baker has paid for all or substantially all of the benefit conferred upon the property. Allstate is the party directly responsible for the installation of the roof. They cannot simply claim the unpaid balance of its contract with ITI. To the extent that Baker can establish a claim against it for defects in the installation of they roof, they should be entitled to a credit against any claims by Allstate.
The court finds that neither ITI nor Allstate is entitled to any recovery under the doctrine of unjust enrichment.
Baker, in its case with ITI, has filed a counterclaim alleging a breach of contract. The contract called for ITI to provide a new roofing system that was weather tight and a 20 year manufacturer's warranty. The court finds that ITI did in fact breach its contract with Baker in that it did not deliver a roofing system that was weather tight nor did it deliver a 20 year warranty. The court finds for Baker on its counterclaim against ITI. CT Page 1490
In an effort to determine what if any damages are due to either party, ITI or Allstate in their original complaints or Baker on its counterclaim, the court comes to the following conclusions. The original contract price was $283,333.00. (See Exhibit 4). There were two addenda to the contract in the amount of $9,830.00 and $1,066.00 respectively. (See Exhibits 31 and 34). Baker concedes certain extra work authorizations in the amounts of $654.00, $580.00 and $2391.00, (Exhibits 16, 26 and 27), and the extra work quotations of $500.00 and $2,399.00 (Exhibits 26, 21 and 38). (See defendant's brief, pp. 31-32).
The conduct of the parties was such that they did not always abide by the written provision of the contract requiring written authorization before any extra work was to be done. In some instances the paperwork would follow after the work was completed. The defendant Baker, by its conduct with ITI directing the performance of work not called for by the contract, constitutes a waiver of the requirement for written approval.Wexler Construction v. Housing Authority, 144 Conn. 187, 193.
Such a provision requiring written authorization for extras or work not contemplated in the original contract "does not preclude a subsequent agreement pursuant to which an obligation not contemplated at the time the original contract was executed is assumed." Brian Construction and Development Co. v. Brighenti,176 Conn. 102, 160-170. (Internal citations omitted).
Exhibit 45 is a letter from ITI to Baker seeking additional funds. It is dated July 29, 1994, a date after which there was no work of a substantial nature performed by ITI. The letter is a request for additional funds. The initial request for additional funds arising out of the necessity to move their inventory and supplies after they were originally placed on the site. Baker ordered the charge and should be responsible for the change at a cost of $3,500.00. The next request is for work clearing up leaks in the penthouse area caused by others at a cost of $16,140.00. Item 3 is a request for funds for additional labor to produce a weather tight condition at the HVAC units. This is something the contract required and is therefore disallowed. Item 4 requests additional funds to correct a condition left by the tenant when a smokestack was installed leaving a considerable amount of work to be done to create a weather tight condition. The sum of $5,000.00 is allowed. Item 5 is for maintenance work outside the scope of the contract and performed at the request of Baker's consultant. CT Page 1491 The request is for $9,360.00 and is appropriate. Item 6 is for work performed at the direction of defendant's consultant in the amount of $2,000.00. Item 7 is a request for overtime. The court finds no basis for this claim and it is therefore denied.
Taking all of the above into consideration, the total due to ITI amounts to $334,753.00. Baker has paid to ITI $253,00.00 leaving a balance of $81,753.00.
Having found for the defendant on its counterclaim, the court must now determine the damages that Baker is entitled to. First the evidence disclosed that the cost of the 20 year warranty that was never delivered amounted to $7,552.00. In addition, the following expenditure s were incurred by Baker in an effort to correct the conditions then existing: Quality Roofing, the sum of $11,026.00; Bellardino Painting, $1,280.00; Colony Builders, $357.31; Norcoun Services, $7,345.00; and Caputo Consulting, $9,805.00. In addition, the sum of $6,092.72, the cost of indemnifying Baker for attorney's fees paid regarding the mechanic's liens that were left remaining on the property in violation of the contract's terms. There remains the cost of valley replacement. The evidence was that the action taken was of a temporary nature not designed to last 20 years. Various figures were presented to the court as indicated in Exhibit 84. The first option was to replace panels and valley flashing at a cost of $81,000.00. The remaining options in Exhibit 84 relate only to repairs and are not of a permanent nature. Testimony was that the repairs made by Quality Roofing require periodic repairs or replacement at a cost of $60,000.00. The replacement cost of $60,000.00 the court finds to be appropriate.
The court awards damages to the defendant Baker on its counterclaim in the amount of $21,743.03.
The Court
_________________ Curran, J.