*334 OPINION OF THE COURT
Fuchsberg, J.
In a matter of first impression in this court, we hold today that the waiver of sovereign immunity effected by section 8 of the Court of Claims Act does not permit punitive damages to be assessed against the State or its political subdivisions.
The issue is presented in the context of a negligence action brought to recover the damages which flowed from injuries sustained by the infant plaintiff, Richard Sharapata, when, as it is alleged, defective slide equipment, on which the child had been invited to play in a public park maintained by the defendant, Town of Islip, turned out to be dangerously defective. Presumably on the basis of such information as was available to the child and his mother at the time their suit was started, the original complaint sought compensatory damages alone.
However, while the case was pending, plaintiffs apparently obtained access to communications between the town’s safety officer and its liability insurance carrier, the substance of which, for present purposes, may be assumed, if it were proved, to have been sufficient to support a finding that the town had acted with reckless indifference to a known danger.[1] Be that as it may, it was on this premise that they moved for leave to amend their complaint to add a prayer for punitive damages.
Notwithstanding the town’s contention that it was never the intention of the State, in enacting section 8, to consent to the bringing of punitive damage claims against it or, as in this case, against one of its local governments, Special Term granted the motion. However, the Appellate Division, Second Department, in an opinion in which Justice Titone made a comprehensive review of case law on the subject, reversed. In doing so, it noted that, during the more than half a century which had elapsed since section 8 *335 (originally section 12-a) of the Court of Claims Act was enacted (L 1929, ch 467, § l),[2] the question, though raised from time to time, had evaded definite resolution (82 AD2d 350). The Appellate Division then granted the plaintiffs leave to appeal to this court from the order entered on its determination. In so doing, it certified a question which, in its usual generalized form, asked us to decide whether the order was “properly made” (CPLR 5602, subd [b], par 1), thus posing the question of law it had decided.
To answer the question we begin our analysis by noting important distinctions between compensatory and punitive damages. The former, including those recoverable for negligent conduct, are based on the fundamental purpose of damages, which is to have the wrongdoer make the victim whole. Put another way, these measure “fair and just compensation, commensurate with the loss or injury sustained from the wrongful act” (13 NY Jur, Damages, § 9; see McCormick, Damages, §§ 20, 137; James, Damages in Accident Cases, 41 Cornell LQ 582).
Punitive or “exemplary” damages, sometimes known as “smart money”,[3] and thus seemingly attuned to the criminal rather than the civil side of the law, are not intended to compensate the injured party but to punish the tort-feasor for his conduct and to deter him and others like him from similar action in the future (Restatement, Torts 2d, § 908; Prosser, Torts [4th ed], pp 9-10). Not only do these differ in purpose and nature from compensatory damages, but they may only be awarded for exceptional misconduct which transgresses mere negligence, as when the wrongdoer has acted “maliciously, wantonly, or with a recklessness that betokens an improper motive or vindictiveness” (9 Encyclopedia New York Law, Damages, § 63) or has engaged in “outrageous or oppressive intentional misconduct” or with “reckless or wanton disregard of safety or rights” (Morris, Punitive Damages in Personal Injury Cases, 21 Ohio St LJ 216).
*336 For a long time these distinctions were of no concern to the State as a potential defendant. For, at common law, as sovereign, it was not liable for injuries arising from the misconduct of an officer and employee, whatever its degree, and thus was not subject to the imposition of either compensatory or punitive damages, unless and to the extent that such liability expressly was assumed by constitutional or legislative enactment (Smith v State of New York,, 227 NY 405; 18 McQuillin, Municipal Corporations [3d ed rev], § 53.24).[4] This general immunity came to an end with the adoption of section 8, which provides: “The state hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations”.
Now, the formal history which accompanied this seemingly straightforward statute at the time of its adoption is sparse. Nevertheless, like all statutes, the legal and historical setting in which it came into existence need not be ignored (see Llewellyn, Common Law Tradition, pp 371-377, esp p 372). Thus, not the least of the legal propositions of which we here cannot lose sight is the axiom that a statute in derogation of the sovereignity of a State must be strictly construed, waiver of immunity by inference being disfavored (Goldstein v State of New York, 281 NY 396; Smith v State of New York, supra; 81A CJS, States, § 299).[5] Section 8 is silent on punitive damages.
All the more is this pertinent because, long before section 8 came on the horizon, though statutes which made cities suable for their torts did not expressly exclude punitive damages, our courts were of the view that “[t]here are *337 weighty reasons, whether we seek to designate them by that very general term, ‘public policy’, or otherwise, which oppose the application of the doctrine of punitive damages to municipal corporations, even in those cases where they might be justifiable against private corporations. The latter are largely created and administered for purposes of profit or for some other personal object. Those who become members of them do so voluntarily, and in the majority of instances in the hope of gain * * * The municipal corporation is different. It is not organized for any purpose of gain or profit, but it is a legal creation engaged in carrying on government and administering its details for the general good and as a matter of public necessity” (Costich v City of Rochester, 68 App Div 623, 631 [Hiscock, J.]).
Moreover, though it, therefore, is hard to believe that any attempt to include punitive damages would not have induced lively legislative debate, contemporary State history preceding the formulation of section 8 gives no indication that the matter ever evoked any legislative interest. Instead, the “evil” the statute was designed to “cure” (see Llewellyn, Common Law Tradition, p 374) appears to have been the one pointed up by Governor Alfred E. Smith in vetoing a large number of “private bills” presented to him at the conclusion of the 1928 legislative session. Such bills sought entry to the Court of Claims for individuals possessing claims which presumably had enough “moral” justification to have commended themselves to their legislative sponsors. Said the Governor, however: “I have been studying claim bills of this kind for years * * * The total amount involved in these claims is enormous * * * Almost all of them are obviously introduced by legislators who have no idea of the validity of the claims * * * There is no reason why access to the Court of Claims should be afforded only to a selected few people who have friends to draw special bills for them and who are able to obtain support in the Legislature to pass them. By disapproving these bills my chief purpose is to call attention to the need of the adoption of a new policy in the hope that the next Legislature will * * * pass the necessary amendments to the General Laws so that this subject may be handled in the future in a logical, fair and orderly way, in place of the *338 haphazard, careless and discriminating procedure which has obtained up to this time” (Public Papers of Governor Alfred E. Smith, pp 200-202 [1928]).
In what has all the earmarks of a true post hoc, propter hoc sequence, the very next session saw the passage of the “necessary amendments” (see 1936 Report of NY Law Rev Comm, pp 962, 963; Herzog, Liability of the State of New York for “Purely Governmental” Functions, 10 Syracuse L Rev 30, 41-42; McNamara, The Court of Claims: Its Development and Present Role in the Unified Court System, 40 St John’s L Rev 1).
Indeed, the Legislature’s enactments to this day continue to reaffirm the policy that public funds not be available, directly or indirectly, for the payment of damages beyond those actually suffered, an approach consistent with the spirit of our State Constitution’s cautions against unwarranted invasion of the public purse (see, e.g., NY Const, art VII, § 8; art VIII, § 9; Wein v State of New York, 39 NY2d 136,142-143; Farrington v State of New York, 248 NY 112, 115). So, while it does not bear directly on section 8 of the Court of Claims Act, it is significant that when, in 1981, the Legislature unified a patchwork of provisions for public indemnification of governmental employees sued in tort for acts or omissions within the scope of their employment, it was careful to exclude indemnification for “exemplary damages, fines or penalties” which the employees might incur (Public Officers Law, § 17, subd 3, pars [a], [c]; § 18, subd 4, pars [b], [c]; see General Municipal Law, § 50-k). In refusing to shelter these employees from ultimate personal responsibility for punitive damages, the statutory draftsmen could hardly have contemplated that, in any event, the State or its subdivisions could be exposed to such damages directly.
Finally, aside from these telltale signs of legislative intent, the twin justifications for punitive damages — punishment and deterrence — are hardly advanced when applied to a governmental unit. As Justice Titone realistically put it in his opinion below, it would be anomalous to have “the persons who bear the burden of punishment, i.e., the taxpayers and citizens”, constitute “the self-same group who are expected to benefit from the public example *339 which the granting of such damages supposedly makes of the wrongdoer” (82 AD2d, at pp 363-364).
The incongruity in this hypothesis is highlighted when we remember that, as with the imposition of a fine in a criminal case, the punitive power of exemplary damages is largely proportionate to the financial sacrifice it means for the malefactor. Were sovereign entities open to punitive damage, would this then mean that the monetary worth of the taxing power of the State or locality against whom such a claim might be directed would be a societally acceptable factor, no matter how relevant to the calculation of a just reward? To ask the question is to answer it.
Furthermore, as to deterrence, the kind of legislative scheme to which we have already alluded — one stressing the employees’ nondelegable obligation to bear the brunt of punitive damage claims while exempting government itself from this risk — may advance that goal.
For all these reasons, as Justice Blackmun recently declared in a somewhat related frame of reference, “Damages awarded for punitive purposes * * * are not sensibly assessed against the governmental entity itself” (City of Newport v Fact Concerts, 453 US 247, 267).
It follows that the question certified by the Appellate Division should be answered in the affirmative and the order from which this appeal is taken should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
Order affirmed, with costs, and question certified answered in the affirmative.

. The correspondence between the town and its carrier revealed that there had been at least three prior accidents in connection with the equipment and that, as described by the carrier, it was a “distinct hazard” because, among other things, handrails were missing, numerous sharp edges of fencing were turned inward towards slide users and a slide plate was buckled and had raised edges, so that the insurer recommended that it be “removed in the interests of accident prevention”.

. Since nothing in this opinion turns on the changes effected when section 12-a was revised, whenever we hereinafter refer to section 8 we intend both the present statute and its previous form.

. (Sebastian v Wood, 246 Iowa 94, 100; Prosser, Torts [4th ed], p 9.)

. The waiver of the State’s immunity applies to the same extent to its political subdivisions, such as defendant town, which as an instrument of the State, carries sovereignty with it (Bernardine v City of New York, 294 NY 361).

. To say that express legislative authorization is a precondition to governmental assumption of liability for exemplary damages is to do no more than to state the rule recognized by a majority of jurisdictions in the United States (Ann., 19 ALR2d 903, 905-911; 18 McQuillin, Municipal Corporations [3d ed rev], § 53.18a, p 161; 63 CJS, Municipal Corporations, p 495; Hines, Municipal Liability for Exemplary Damages, 15 Clev-Mar L Rev 304).