*385 OPINION OF THE COURT
Alexander, J.
This litigation arises out of a multimillion dollar track improvement of the Port Jefferson branch of the Long Island Railroad by the addition of a second railroad track between Amott and Huntington. Construction on the contract, which defendant, Long Island Rail Road Company (LIRR), awarded to plaintiff, Clark-Fitzpatrick, Inc., as low bidder, began in September 1983. As alleged by plaintiff, the contract contained detailed engineering specifications that instructed plaintiff on how to proceed with construction. Plaintiff contends that, after construction began, it discovered that defendant was unprepared to proceed with the project — specifically, that the engineering design was flawed, thus requiring substantial design changes during the course of construction; that defendant had failed to acquire the rights to certain necessary properties bordering the construction sites; and that defendant had failed to locate and move various utility lines throughout the project that interfered with construction. Notwithstanding these difficulties, plaintiff proceeded with construction, which was completed in July 1986 — almost one year after the scheduled completion date.
The various problems with project design and construction caused plaintiff, in November of 1984, to commence this action against the railroad and the railroad’s parent, the Metrópoli *386 tan Transportation Authority (MTA),[1] sounding in breach of contract, quasi contract, fraud, gross negligence and negligence. Alleging that defendant entered into the contract with full knowledge of the problems, but intentionally concealed them from plaintiff, plaintiff seeks to recover compensatory and punitive damages. Defendant moved to dismiss the causes of action sounding in negligence and quasi contract, and sought dismissal of the demand for punitive damages on the ground that, as a public benefit corporation, it was immune from such damages. Special Term granted the motion in its entirety. The Appellate Division unanimously affirmed and granted leave to this court upon the certified question: Was the order properly made? We now affirm, answering the certified question in the affirmative.
I.
We find without merit plaintiffs contention that defendant — a public benefit corporation heavily supported by tax dollars and performing an essential government function in providing commuter transportation — may be subject to punitive damages.
We have held that the State and its political subdivisions are not subject to punitive damages (Sharapata v Town of Islip, 56 NY2d 332). In so holding, we recognized that the goals of punishment and deterrence are. not served when punitive damages are imposed against the State, for in such circumstances, it ultimately is the innocent taxpayer who is punished (Sharapata v Town of Islip, 56 NY2d, at 338, supra). Although punitive damages may be appropriately imposed against a private profit-making corporation, a "municipality is different” because " '[i]t is not organized for any purpose of gain or profit, but it is a legal creation engaged in carrying on government and administering its details for the general good and as a matter of public necessity’ ” (Sharapata v Town of Islip, 56 NY2d, at 337, supra, quoting Costich v City of Rochester, 68 App Div 623, 631).
The LIRE, of course, is not itself the State or one of its political subdivisions; rather, it is, pursuant to Public Authorities Law § 1266 (5), a public benefit subsidiary corporation of the MTA. Although "public benefit corporations * * * created *387 by the State for the general purpose of performing functions essentially governmental in nature, are not identical to the State or any of its agencies, but rather enjoy, for some purposes, an existence separate and apart from the State, its agencies and political subdivisions” (Grace & Co. v State Univ. Constr. Fund, 44 NY2d 84, 88 [State University Construction Fund]), we have held that a particularized inquiry is necessary to determine whether — for the specific purpose at issue — the public benefit corporation should be treated like the State (see, Grace & Co. v State Univ. Constr. Fund, 44 NY2d 84, supra).
Applying this standard to the instant appeal, we hold, in light of the essential public function served by defendant in providing commuter transportation and the public source of much of its funding, that defendant should receive the same immunity from punitive damages as do the State and its political subdivisions. This conclusion proceeds inexorably from an examination of the enabling legislation creating defendant’s parent organization, the MTA, and the purposes articulated therein of furthering the development of commuter services essential to the economic health of the State (Public Authorities Law § 1263, L 1965, ch 324). Those purposes are specified by statute as being "in all respects for the benefit of the people of the state of New York”, and the Legislature further commanded that "the authority shall be regarded as performing an essential governmental function” (Public Authorities Law § 1264 [2]).
As a subsidiary of the MTA, defendant obviously plays a critical role in implementing this legislative goal and furthering this governmental purpose. Indeed, the Legislature clearly recognized this when, in explaining the urgent need for a transportation áuthority, stated that "[tjhrough [the MTA] the state [can] deal flexibly and efficiently with the differing financial, managerial and operational problems involved in insuring the continuation of such essential commuter services as those presently being provided by the Long Island Rail Road and the New York, New Haven and Hartford Railroad” (L 1965, ch 324, § 1 [7] [emphasis added]). Furthermore, the office of the State Comptroller, in a report analyzing selected aspects of defendant’s five-year capital plan, found that it "provides a vital transportation link between the City of New York and the suburban counties of Nassau and Suffolk” and that "[o]n an average weekday, more than 700 trains carry in excess of 287,000 passengers”, making defendant the busiest commuter railroad in the Nation (Off of State Comptroller, *388 Long Island Rail Road: Selected Management Aspects of the Five-Year Capital Program, Report 84-S-135). Thus, the essential, public nature of defendant’s role in providing commuter transportation cannot be seriously questioned. Burdening so important a public function by the imposition of punitive damages would therefore not be desirable.
Moreover, the record shows that defendant receives much of its funding from taxpayer revenues and that, at the time this action was commenced, 49% of defendant’s total expenses were financed from outside subsidies, most of which were derived from public sources. The construction project at issue was also, in large measure, publicly financed. Thus, as was the case in Sharapata, the imposition of punitive damages against defendant would ultimately punish only the innocent taxpayers of New York State (Sharapata v Town of Islip, 56 NY2d 332, 338, supra). Accordingly, given the essential, governmental purpose that defendant serves, and considering the public sources of much of its funding, we hold that defendant should be exempt from the imposition of punitive damages.
II.
Turning to plaintiff's cause of action sounding in quasi contract, we conclude that it was properly dismissed. The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter (Blanchard v Blanchard, 201 NY 134, 138; see also, 66 Am Jur 2d, Restitution and Implied Contracts, § 6, at 949). A "quasi contract” only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party’s unjust enrichment (Parsa v State of New York, 64 NY2d 143, 148; Farash v Sykes Datatronics, 59 NY2d 500, 504; Bradkin v Leverton, 26 NY2d 192, 197; Smith v Kirkpatrick, 305 NY 66, 73; Grombach Prods. v Waring, 293 NY 609, 615; Miller v Schloss, 218 NY 400, 407; see also, 1 Williston, Contracts § 3A [3d ed]; Calamari and Perillo, Contracts § 1-12, at 19 [2d ed]; 1 Corbin, Contracts § 19). Indeed, we have stated that: "Quasi contracts are not contracts at all, although they give rise to obligations more akin to those stemming from contract than from tort. The contract is a mere fiction, a form imposed in order to adapt the case to a given remedy * * * Briefly stated, a quasi-contractual obligation is one imposed by law where *389 there has been no agreement or expression of assent, by word or act, on the part of either party involved. The law creates it, regardless of the intention of the parties, to assure a just and equitable result” (Bradkin v Leverton, 26 NY2d, at 196, supra [emphasis added]).
Of course, a party may perform a contract under protest, and then sue for damages resulting from the second party’s breach (Borough Constr. Co. v City of New York, 200 NY 149). Alternatively, where rescission of a contract is warranted, a party may timely rescind and seek recovery on the theory of quasi contract (see, Soviero Bros. Contr. Corp. v City of New York, 286 App Div 435, affd 2 NY2d 924; see also, 22 NY Jur 2d, Contracts, § 462, at 402). It is impermissible, however, to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties (see, Soviero Bros. Contr. Corp. v City of New York, 286 App Div 435, supra; see also, 12 Williston, Contracts § 1459, at 69 [3d ed]; 22 NY Jur 2d, Contracts, § 465, at 410).
Here, it is undisputed that the relationship between the parties was defined by a written contract, fully detailing all applicable terms and conditions, and specifically providing for project design changes with adjustments in compensation contemplated in light of those changes. Notwithstanding plaintiffs claim that defendant breached the contract, plaintiff chose not to rescind the agreement, but instead to complete performance of the contract and sue to recover damages, which of course was plaintiffs right. Having chosen this course, however, plaintiff is now limited to recovery of damages on the contract, and may not seek recovery based on an alleged quasi contract.
Finally, we conclude that the two causes of action sounding in negligence were also properly dismissed. It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated (Meyers v Waverly Fabrics, 65 NY2d 75, 80, n 2; North Shore Bottling Co. v Schmidt & Sons, 22 NY2d 171, 179; Rich v New York Cent. & Hudson Riv. R. R. Co., 87 NY 382, 390). This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract (see, Rich v New York Cent. & Hudson Riv. R. R. Co., 87 NY 382, 398, supra).
*390 Here, plaintiff has not alleged the violation of a legal duty independent of the contract. In its cause of action for gross negligence, plaintiff alleges that defendant failed to exercise "due care” in designing the project, locating utility lines, acquiring necessary property rights, and informing plaintiff of problems with the project before construction began. Each of these allegations, however, is merely a restatement, albeit in slightly different language, of the "implied” contractual obligations asserted in the cause of action for breach of contract (cf., Deerfield Communications Corp. v Chesebrough-Ponds, Inc., 68 NY2d 954 [fraud claim held to be dressed-up version of contract cause of action]).[2] Moreover, the damages plaintiff allegedly sustained as a consequence of defendant’s violation of a "duty of due care” in designing the project were clearly within the contemplation of the written agreement, as indicated by the design change and adjusted compensation provisions of the contract. Merely charging a breach of a "duty of due care”, employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim.
Based on the foregoing, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, etc.

. Although the Metropolitan Transportation Authority is named as a defendant, the amended complaint states no causes of action against it, and it is not involved in this appeal.

. Plaintiffs cause of action sounding in fraud was not challenged below and is not an issue on this appeal.