**Paul A. KROHN, Plaintiff–Appellee–
Cross–Appellant,**

**Alli Katt, Plaintiff–Appellee,**

v.

**NEW YORK CITY POLICE DEPART-
MENT and Anthony Dipalma, Defen-
dants–Appellants–Cross–Appellees.**

**Docket Nos. 01–7827(LEAD), 01–
7875(CON), 01–9023(XAP).**

United States Court of Appeals,
Second Circuit.

Argued:  March 21, 2003.

Decided:  Aug. 25, 2003.

Scott Shorr, Esq., Corporation Counsel's Office, City of New York, New York, N.Y.

for Defendants–Appellants–Cross–Appellees.

Scott Samay, Esq., Kirkland & Ellis, New York, N.Y. for Plaintiff–Appellee–Cross–Appellant.

Before: FEINBERG, VAN GRAAFEILAND, F.I. PARKER,* Circuit Judges.

F.I. PARKER, Circuit Judge.

Defendants-appellants-cross-appellees, the New York City Police Department ("the City") and Anthony DiPalma, appealed from that portion of the June 26, 2001 judgment of the United States District Court for the Southern District of New York (Gerard E. Lynch, *Judge*) that denied their motion for a new trial after a jury verdict on plaintiff Alli Katt's claim of a hostile work environment in violation of federal, state and city law. Defendants argued that the district court abused its discretion in admitting certain evidence and therefore a new trial was required. We affirmed the district court's decision denying a new trial in an earlier summary order filed on April 2, 2003. *Krohn v. New York City Police Dep't*, 2003 WL 1785897, 60 Fed. Appx. 357 (2d Cir.2003).

Katt[1] cross-appeals, challenging that portion of the June 26, 2001 judgment that vacated the award of punitive damages against the City, and also the subsequent district court order denying Katt's motion for reconsideration of the decision to vacate the punitive damages award. In answer to Katt's cross-appeal, the City argues that we should certify the question of whether punitive damages are available against the City under New York City

---

* The Honorable Fred I. Parker died on August 12, 2003. Prior to his death he fully participated in the consideration and decision of this case and prepared this opinion.

1. Paul A. Krohn, bankruptcy trustee for Alli Katt, has been added as a plaintiff-appellee-cross-appellant in this case. Consistent with the parties' briefs and our summary order, however, we will refer to plaintiffs collectively as "Katt."

Human Rights Law, New York City Admin. Code Sec. 8–101, *et seq.*, ("NYCHRL"), to the New York Court of Appeals.

The earlier summary order affirmed the district court's denial of a new trial, and reserved decision on the plaintiffs' cross-appeal and the defendants' motion to certify. Because of an absence of New York case law regarding the question of whether punitive damages against a municipality are available under the NYCHRL, we certify the following question to the New York Court of Appeals: Can a person claiming gender-based employment discrimination recover punitive damages from the City of New York under section 8–502(a) of the New York City Human Rights Law, N.Y.C. Admin. Code § 8–502(a)?

## I.  BACKGROUND

In 1995, Alli Katt filed a complaint against the City and various city employees, alleging that, as a civilian employee of the New York City Police Department, she had been subjected to sexual harassment and a sexually hostile work environment. Originally, Katt's then-pro se complaint named several defendants and included claims under a range of federal and state anti-discrimination and civil rights laws. However, by the time of the trial in 2000, she had retained counsel and only violations of 42 U.S.C. § 1983, the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.*, and § 8–502 of the NYCHRL remained. The defendants were the City and Katt's former supervisor, Lt. Anthony DiPalma.

At trial, Katt presented evidence of extensive and pervasive sexual harassment and was awarded $400,000 in compensatory damages against both defendants, and $1,000,000 in punitive damages against the City alone. The City and DiPalma then moved for judgment as a matter of law, pursuant to Fed.R.Civ.P. 50, or, alternatively, for the grant of a new trial or to set aside the verdict pursuant to Fed.R.Civ.P. 59. The City also challenged the punitive damages award, which had been awarded pursuant to the NYCHRL. As the parties agree, neither 42 U.S.C. § 1983 nor N.Y. Exec. Law § 290 authorizes the award of punitive damages against a municipality. The district court granted the City's motion to set aside the punitive damages award, pursuant to Fed.R.Civ.P. 59(b), based on its conclusion that the NYCHRL also did not authorize an award of punitive damages, and denied the City's motion in all other respects.[2] Judgment was entered on June 26, 2001.

On July 12, 2001, Katt filed a timely motion for reconsideration of the decision to vacate the punitive damages award, pursuant to Fed.R.Civ.P. 59(e) and Fed. R.Civ.P. 60(b). Her motion was based primarily upon a letter written to Judge Lynch from Craig Gurian, a lawyer who identified himself as the principal author of the NYCHRL provisions at issue, and asserted that the ordinance had been intended to authorize punitive damages against the city. On August 7, 2001, the district court denied Katt's motion for reconsideration.

As noted above, we have previously ruled upon the City's appeal and this opinion addresses Katt's cross-appeal, timely

**2.** The court noted its surprise at the lack of direct authority resolving the punitive damages issue, "It is somewhat surprising that this issue appears to be one of first impression in this or any other court. Because the issue is purely one of state law, with ramifications for the allocation of scarce public (state and local) resources, it would surely be best resolved by the courts and legislative authorities of New York."

filed on August 28, 2001. The cross-appeal is from the district court's decision to set aside the punitive damages award, and from its denial of her motion for reconsideration. In June 2002, the City filed a motion, pursuant to this Court's Rule § 0.27, for an order to certify the question of whether the NYCHRL authorizes recovery of punitive damages from the City of New York for violations of that ordinance.

## II. ANALYTICAL FRAMEWORK

### A. *Standard of Review*

■ This court reviews questions of statutory interpretation de novo, *United States v. Pettus,* 303 F.3d 480, 483 (2d Cir.2002), but defers to state court interpretations of state and local laws. *Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan,* 263 F.3d 196, 203 (2d Cir.2001) ("[I]t is well-established that the controlling interpretation of state laws should normally be given by state rather than federal courts.").

### B. *Certification Generally*

■ "Where an 'unsettled and significant question of state law ... will control the outcome of [the] case, ... we may certify that question to · the New York Court of Appeals." *Baker v. Health Mgmt. Sys.,* 264 F.3d 144, 153 (2d Cir. 2001) (citing 2d Cir. R. § 0.27; N.Y. Comp. Codes R. & Regs. tit. 22, § 500.17 (2000) (certification is appropriate "[w]henever it appears ... that determinative questions of New York law are involved in the cause pending before it for which there is no controlling precedent of the [New York] Court of Appeals")). Certifying a question is proper "where [a] statute's plain language does not indicate the answer, or when [we are] presented with a complex question of New York common law for which no New York authority can be found." *Riordan v. Nationwide Mut. Fire Ins. Co.,* 977 F.2d 47, 51 (2d Cir.1992).

■ Certification is a discretionary procedure, but questions "are not to be routinely certified to the highest court[ ] of New York ... simply because a certification procedure is available." *Kidney by Kidney v. Kolmar Labs., Inc.,* 808 F.2d 955, 957 (2d Cir.1987). Factors justifying certification include "the absence of authoritative state court interpretations of the state statute, the importance of the issue to the state and the likelihood that the question will recur, and the capacity of certification to resolve the litigation." *Green v. Montgomery,* 219 F.3d 52, 60 (2d Cir.2000). Additionally, we assess whether the question implicates issues of state public policy. *Home Ins. Co. v. Am. Home Prods. Corp.,* 873 F.2d 520, 522 (2d Cir.1989) (certifying a question because it "directly involved the application of an important public policy of the State of New York" and "[t]here [was] no precedent on the issue ... and New York has a strong interest in deciding the issue certified rather than having the only precedent on point be that of the federal court, which may be mistaken").

## III. DISCUSSION

### A. *Damages Against a Municipality Under New York Law*

■ When determining whether damages are available against a municipality, under New York law, "a statute in derogation of the sovereignty of a State must be strictly construed, [and] waiver of immunity by inference [is] disfavored." *Sharapata v. Town of Islip,* 56 N.Y.2d 332, 336, 437 N.E.2d 1104, 1106, 452 N.Y.S.2d 347, 349 (1982). Thus, to determine whether punitive damages are available here, we must assess whether the NYCHRL has clearly derogated sovereign immunity and submitted the City to liability for punitive damages.

## B.  Text of NYCHRL

Beginning, as we must, with the text of the statute, *see Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985), we find the wording inconclusive.  NYCHRL's damages provision does include punitive damages:

> Except as otherwise provided by law, any person claiming to be aggrieved by an unlawful discriminatory practice as defined in chapter one of this title or by an act of discriminatory harassment or violence as set forth in chapter six of this title shall have a cause of action in any court of competent jurisdiction for damages, including punitive damages . . . with respect to such alleged unlawful discriminatory practice or act of discriminatory harassment or violence.

NYCHRL § 8–502(a).  However, nowhere in the statute do we find an overt indication of intent to subject municipalities to punitive damages awards.

Under NYCHRL, it is an unlawful discriminatory practice "[f]or an employer or an employee or agent thereof" to discharge or discriminate "in competition or in terms, conditions or privileges of employment" against a person on the basis of, among other things, gender.  NYCHRL § 8–107(1)(a).  However, the statute does not define the term "employer."  Further, although the NYCHRL defines the terms "covered entity" and "person," to explicitly include "governmental bodies [and] agencies," *see id.* § 8–102(2), (17), and provides that covered entities and persons must comply, neither term is used to define

potential defendants subject to punitive damages.  Thus, while one might reasonably read the language as including municipalities, even accepting that reading, it is. not at all clear whether such an interpretation constitutes the clear derogation of sovereign immunity that New York law requires.  Therefore, our analysis of the statutory language is inconclusive.[3]

## C.  New York State Case Law

■  Although "we will not certify questions of law where sufficient precedents exist for us to make that determination," *McCarthy v. Olin Corp.,* 119 F.3d 148, 154 (2d Cir.1997), we find none here.  The New York Court of Appeals has indicated that punitive damages could be assessed against a municipality if the requisite clear legislative intent was present in the governing statute.  *See Sharapata,* 56 N.Y.2d at 336, 437 N.E.2d at 1106, 452 N.Y.S.2d at 349.  However, that court has not yet found sufficient legislative intent in any law to override the presumption against a waiver of municipal immunity.  *See, e.g., Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 388, 516 N.E.2d 190, 192–93, 521 N.Y.S.2d 653, 655–56 (1987); *Sharapata,* 56 N.Y.2d at 336, 437 N.E.2d at 1106, 452 N.Y.S.2d at 349.  Further, while New York's lower courts generally assume that no punitive damages will lie against a municipality or its agencies, *see, e.g., Karoon v. New York City Transit Auth.,* 241 A.D.2d 323, 659 N.Y.S.2d 27 (1st Dep't 1997); *Hargraves v. Bath Cent. Sch. Dist.,* 237 A.D.2d 977, 654 N.Y.S.2d 539 (4th Dep't 1997), one city court has permitted the imposition of punitive damages against a city agency, apparently assuming that the NYCHRL authorized pu-

**3.**  It is conceivable that we might delve deep into the legislative history of the ordinance as suggested by Katt, with her reliance on Mr. Gurian's account of NYCHRL's inception and passage.  However, given the fact that this is a matter of undecided state law which impli- cates public policy and affects municipalities, certification precedent, as outlined above, strongly suggests that it is preferable to certify the interpretative question to the New York Court of Appeals.

nitive damages against city agencies to the same extent as against private defendants. *See Grullon v. South Bronx Overall Econ. Dev. Corp.,* 185 Misc.2d 645, 712 N.Y.S.2d 911 (N.Y.City Civ.Ct.2000). Where there is no definitive state court authority on an issue, and the lower state courts are split in their approach, certification of the question to the state's highest court is appropriate. *See Green,* 219 F.3d at 60; *Riordan,* 977 F.2d at 51.

Moreover, the state courts have indicated that the question now before us raises significant public policy concerns. Specifically, the New York Court of Appeals has written that "the twin justifications for punitive damages—punishment and deterrence—are hardly advanced when applied to a government unit," *Sharapata,* 56 N.Y.2d at 338, 437 N.E.2d at 1107, 452 N.Y.S.2d at 350, and that such damages ultimately "punish only the innocent taxpayers of New York State." *Clark–Fitzpatrick,* 70 N.Y.2d at 388, 516 N.E.2d at 192–93, 521 N.Y.S.2d at 655–56.

For the reasons detailed above, we believe that the New York Court of Appeals can best resolve the issues of state common law and policy that are implicated by this question. *See, e.g., Riordan,* 977 F.2d at 51; *Home Ins. Co.,* 873 F.2d at 522.

## IV. CONCLUSION

■ Because of the absence of authoritative state court interpretations of the NYCHRL on the question of whether punitive damages are available against a municipality, the importance of the question and its policy implications to the state, the likelihood that the question will recur, and the fact that the answer will resolve this litigation, we hereby respectfully certify the following question to the New York Court of Appeals: Can a person claiming gender-based employment discrimination recover punitive damages from the City of New York under section 8–502(a) of the New York City Human Rights Law, N.Y.C. Admin. Code § 8–502(a)?

The certified question may be deemed expanded to cover any further pertinent question of New York law involved in this appeal that the Court of Appeals chooses to answer. This panel retains jurisdiction and will consider any issues that may remain on appeal once the New York Court of Appeals has either provided us with its guidance, or declined certification.

It is therefore ordered that the Clerk of this Court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below, together with a complete set of briefs, appendices, and record filed in this Court by the parties.

## CERTIFICATE

The foregoing is hereby certified to the Court of Appeals of the State of New York, pursuant to 2d Cir. R. § 0.27 and N.Y. Comp.Codes R. & Regs. tit. 22, § 500.17, as ordered by the United States Court of Appeals for the Second Circuit.