■ NICHOLAS CHIARA, an Infant, by His Mother and Natural Guardian, VENETIA K. CHIARA, Plaintiff, and VENETIA K. CHIARA, Respondent, v SEAN P. DERNAGO et al., Appellants. [11 NYS3d 96]—

In an action to recover damages for personal injuries, the defendant Sean P. Dernago appeals, as limited by his brief, from so much of a judgment of the Supreme Court, Nassau County (Jaeger, J.), dated September 14, 2012, as, upon, inter alia, a jury verdict on the issue of damages in favor of the plaintiff Venetia K. Chiara and against him, and upon the denial of his

motion pursuant to CPLR 4404 (a) to set aside the jury verdict on damages and for judgment as a matter of law or, in the alternative, to set aside the jury verdict on the issue of damages as contrary to the weight of the evidence and for a new trial on that issue, is in favor of the plaintiff Venetia K. Chiara and against him in the principal sum of $160,000 for compensatory damages and the principal sum of $70,000 for punitive damages, and the defendant Connecticut Shellfish Co. separately appeals, as limited by its brief, from so much of the same judgment as, upon, inter alia, a jury verdict on the issue of damages in favor of the plaintiff Venetia K. Chiara and against it, and upon the denial of its motion pursuant to CPLR 4404 (a) to set aside the jury verdict on damages and for judgment as a matter of law or, in the alternative, to set aside the jury verdict on the issue of damages as contrary to the weight of the evidence and for a new trial on that issue, is in favor of the plaintiff Venetia K. Chiara and against it in the principal sum of $160,000 for compensatory damages.

Ordered that the judgment is affirmed, with one bill of costs.

On May 7, 2005, the defendant Sean P. Dernago was driving a box truck owned by his employer, the defendant Connecticut Shellfish Co. (hereinafter Shellfish), when he was involved in a three-vehicle collision on the George Washington Bridge. The plaintiffs, who were passengers in one of the other vehicles involved in the collision, commenced this action to recover damages for personal injuries sustained as a result of the accident. Although the causes of action asserted by the infant plaintiff were settled during a trial on the issue of liability, the claims asserted by the plaintiff Venetia K. Chiara (hereinafter the injured plaintiff) were submitted to a jury.

The evidence at the trial on the issue of liability demonstrated that, several hours before the accident, Dernago drove a Shellfish company truck to a Hooters restaurant in Paramus, New Jersey, and spent approximately two hours there. During that time, he discussed Shellfish's product with the restaurant manager and consumed multiple beers. Although Dernago could not remember the exact number of beers he drank at the restaurant, he stated that it was probably no more than 10. After he left the restaurant, he stopped at a nearby Red Lobster restaurant to make a delivery and then drove toward the Bronx to make another stop. Shortly after Dernago drove onto the George Washington Bridge, he veered from his lane more than once, rear-ended a pickup truck, and effectively "launched" the pickup truck into the plaintiffs' vehicle. After the accident, Dernago approached the plaintiffs' vehicle "talking basic

nonsense." Among other things, he asserted that he was not drunk and that he was "stopping for the toll." Dernago could not recall if he saw the other vehicles involved in the collision prior to the impact, or any other relevant circumstances of the accident. Although he could not remember if he was given a field sobriety test at the scene of the accident, he was placed under arrest at the scene. The evidence at the liability trial further demonstrated that Dernago had a blood alcohol content of .172 of one percent by weight after the accident, and that he ultimately pleaded guilty to driving while intoxicated as a misdemeanor. The jury found that Dernago was negligent, and that his negligence was a substantial factor in causing the accident.

After a trial on the issue of damages, the Supreme Court provided the jury with appropriate instructions on punitive damages. In this regard, it charged the jury that it may award punitive damages against Dernago if it found, by clear and convincing evidence, that his acts were wanton, reckless, and representative of a high degree of immorality. The jury found that the injured plaintiff sustained a serious injury under the significant limitation of use category of Insurance Law § 5102 (d) as a result of the subject accident, awarded her compensatory damages in the sum of $160,000 against both Dernago and Shellfish, and awarded her punitive damages in the sum of $70,000 against Dernago.

The defendants separately moved to set aside the verdict on the issue of damages and for judgment as a matter of law or, in the alternative, to set aside the jury verdict on the issue of damages as contrary to the weight of the evidence and for a new trial on that issue. They argued that there was insufficient evidence supporting the jury's determination that the injured plaintiff sustained a serious injury within the meaning of Insurance Law § 5102 (d). Dernago further argued that the award of punitive damages was not "sustained" by the evidence. The Supreme Court denied the motions and entered a judgment in favor of the injured plaintiff and against the defendants. The defendants separately appeal from the judgment, raising essentially the same arguments made in support of their posttrial motions. We affirm the judgment.

"Before granting a motion pursuant to CPLR 4404 (a) to set aside a verdict and for judgment as a matter of law, the trial court must conclude that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence at trial" (*Michael H. Spector, AIA, P.C. v*

*Billy Smith's Sport Ctr., Inc.*, 95 AD3d 967, 967 [2012] [internal quotation marks omitted]; *see Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]; *Soto v City of New York*, 63 AD3d 1035, 1036 [2009]). The evidence must be viewed in the light most favorable to the prevailing party (*see Hammond v Diaz*, 82 AD3d 839, 840 [2011]).

Here, the Supreme Court properly denied those branches of the defendants' separate posttrial motions which were to set aside the jury verdict on the issue of damages and for judgment as a matter of law. The injured plaintiff presented the testimony of her treating physician, who stated that the injured plaintiff sustained injuries to her cervical spine as a result of the subject accident. The treating physician based his opinion on the absence of symptoms prior to the accident, the intervening act of a traumatic injury, and his subsequent physical findings. Further, he examined the injured plaintiff less than two months after the accident, approximately three years after the accident, and once again less then one week before he testified at trial. On each occasion, he made the same findings that the plaintiff had a significantly decreased range of motion with respect to her cervical spine. Although the physician conceded that an MRI film showed degeneration in the injured plaintiff's cervical spine, he stated that it also showed disc herniations which were caused by the accident. Based on the foregoing evidence and the other evidence presented at trial, a valid line of reasoning and permissible inferences could lead a rational person to the conclusion that the injured plaintiff sustained a serious injury within the meaning of Insurance Law § 5102 (d) insofar as she sustained a significant limitation in the use of her cervical spine, in both degree and duration, and that this injury was caused by the accident (*see Perl v Meher*, 18 NY3d 208, 217-219 [2011]; *Estrella v GEICO Ins. Co.*, 102 AD3d 730, 731-732 [2013]; *Lively v Fernandez*, 85 AD3d 981, 982 [2011]).

Furthermore, the jury's finding that the plaintiff sustained a serious injury under the significant limitation of use category of Insurance Law § 5102 (d) was not contrary to the weight of the evidence. A jury verdict should not be set aside as contrary to the weight of the evidence unless the jury could not have reached its verdict on any fair interpretation of the evidence (*see Lolik v Big v Supermarkets*, 86 NY2d 744 [1995]; *Zhubrak v Petro*, 122 AD3d 922, 923 [2014]; *Nicastro v Park*, 113 AD2d 129 [1985]). "The jury's resolution of conflicting expert testimony is entitled to great weight on appeal, as it is the jury that had the opportunity to observe and hear the experts" (*Ferreira v Wyckoff Hgts. Med. Ctr.*, 81 AD3d 587, 588 [2011]; *see*

*Mancusi v Setzen*, 73 AD3d 992, 993 [2010]). Where, as here, conflicting expert testimony is presented, the jury is entitled to accept one expert's opinion and reject that of another (*see Albano v K.R. & S. Auto Repair, Inc.*, 123 AD3d 748 [2014]; *Ferreira v Wyckoff Hgts. Med. Ctr.*, 81 AD3d at 588), and it was a fair interpretation of the evidence for the jury to credit the opinion of the plaintiff's expert over that of the defense experts.

Contrary to Dernago's contention, the jury's award of punitive damages in the sum of $70,000 against him was supported by clear and convincing evidence (*see Randi A. J. v Long Is. Surgi-Ctr.*, 46 AD3d 74, 86 [2007]). Whereas compensatory damages are intended to assure that the victim receives "fair and just compensation commensurate with the injury sustained," punitive damages are meant to "punish the tortfeasor and to deter this wrongdoer and others similarly situated from indulging in the same conduct in the future" (*Ross v Louise Wise Servs., Inc.*, 8 NY3d 478, 489 [2007]; *see Sharapata v Town of Islip*, 56 NY2d 332, 335 [1982]; *Walker v Sheldon*, 10 NY2d 401, 404 [1961]; *Western N.Y. Land Conservancy, Inc. v Cullen*, 66 AD3d 1461, 1463 [2009]). Evidence that a defendant was driving while intoxicated is insufficient, standing alone, to justify the imposition of punitive damages (*see Rodgers v Duffy*, 95 AD3d 864, 866-867 [2012]; *D'Angelo v Litterer*, 77 AD3d 1373, 1374 [2010]; *Trudeau v Cooke*, 2 AD3d 1133, 1134 [2003]; *Deon v Fortuna*, 283 AD2d 388, 389 [2001]). However, driving while intoxicated may support an award for punitive damages where there is additional evidence that the defendant engaged in "wanton and reckless" conduct evincing heedlessness and an utter disregard for the safety of others (*Schragel v Juszczyk*, 43 AD3d 1375, 1375 [2007]; *see Parkhill v Cleary*, 305 AD2d 1088, 1089 [2003]; *Taylor v Dyer*, 190 AD2d 902, 903 [1993]; *Sweeney v McCormick*, 159 AD2d 832, 834 [1990]; *see also Deon v Fortuna*, 283 AD2d at 389). An evaluation of whether punitive damages are warranted must be made "on a case-by-case basis taking into account the nature of the actor's conduct and the level of his intoxication" (*Sweeney v McCormick*, 159 AD2d at 834). Here, a determination that Dernago's conduct was wanton and reckless is supported by evidence that he consumed numerous beers and attained a blood alcohol content of at least .172 of one percent by weight, over twice the legal limit, before driving his company's box truck onto the George Washington Bridge, and causing a multi-vehicle accident by rear-ending a pick-up truck. Dernago was essentially incoherent at the scene of the accident, and could not even recall undergoing a field sobriety test. Under all of the circumstances, the jury's award of punitive damages was entirely appropriate to punish

Dernago for his wanton and reckless conduct (*see Schragel v Juszczyk*, 43 AD3d at 1376; *Arumugam v Smith*, 277 AD2d 979 [2000]; *Rinaldo v Mashayekhi*, 185 AD2d 435, 436 [1992]), and to help deter future reprehensible conduct (*see Ross v Louise Wise Servs., Inc.*, 8 NY3d at 489). Rivera, J.P., Sgroi, Maltese and LaSalle, JJ., concur.