Shaia v Saw Mill Capital, LLC (2021 NY Slip Op 06716)





Shaia v Saw Mill Capital, LLC


2021 NY Slip Op 06716


Decided on December 1, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 1, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
ROBERT J. MILLER
COLLEEN D. DUFFY
LARA J. GENOVESI, JJ.


2017-13431
 (Index No. 59787/14)

[*1]John J. Shaia, appellant, 
v
Saw Mill Capital, LLC, respondent, et al., defendants.


Mintz & Gold, LLP, New York, NY (Howard Miller and Kevin M. Brown of counsel), for appellant.
Kasowitz Benson Torres LLP, New York, NY (Mark W. Lerner and Joshua D. Fulop of counsel), for respondent Saw Mill Capital, LLC, and defendants Saw Mill Capital Associates, LP, Saw Mill Capital Holdings, LP, and Saw Mill Investments III, LLC.



DECISION & ORDER
In an action, inter alia, to recover damages for breach of contract, the plaintiff appeals from a judgment of the Supreme Court, Westchester County (Alan D. Scheinkman, J.), dated October 30, 2017. The judgment, insofar as appealed from, upon a decision of the same court dated August 25, 2017, made after a nonjury trial, is in favor of the defendant Saw Mill Capital, LLC, and against the plaintiff dismissing the amended complaint insofar as asserted against that defendant.
ORDERED that the judgment is affirmed insofar as appealed from, with costs.
The defendant Saw Mill Capital, LLC (hereinafter SMC), is a private equity firm. Private equity firms raise capital from outside investors, and in return, those investors become limited partners in the investment vehicle or "fund." These investors typically receive 80% of the fund's profits, while firm employees receive the remaining 20%, otherwise known as the "carry" or "carried interest." The fund's general partner collects and distributes the carried interest. Typically, private equity employees receive carried interest by becoming limited partners of the fund.
On January 31, 2002, the plaintiff and SMC entered into a written employment agreement. After a six-month evaluation period, if SMC employed the plaintiff, he would receive a base salary, a year-end bonus, and carried interest in each investment closed. The plaintiff's initial carried interest would be 8.125%, and SMC reserved the right to review and modify the firm's vesting schedule on future transactions "from time to time as circumstances dictate." In 2002, SMC was a "fundless sponsor," meaning that it raised capital on an investment-by-investment basis after such investment had been identified. In 2005, Howard Unger, the managing partner of SMC, decided that SMC would launch a pre-committed fund, also known as a "blind pool," to be called the "Main Fund." In 2006, the defendant Saw Mill Capital Associates, LP (hereinafter Associates), was created to receive the carried interest from the Main Fund. Unger was the only limited partner in Associates through a placeholder partnership agreement dated January 11, 2006.
In August 2010, Unger distributed copies of the limited partnership agreement in Associates (hereinafter the Associates partnership agreement) to each member of SMC for his or her [*2]signature, including the plaintiff. That agreement included a firm vesting schedule that applied to everyone at SMC receiving carried interest from the Main Fund. The plaintiff never signed the Associates partnership agreement. Beginning in 2007 and continuing through 2012, the plaintiff received an IRS Schedule K-1 corresponding to his limited partnership interest in Associates.
In April 2011, Unger informed the plaintiff that his employment with SMC would be terminated. It was agreed that the plaintiff would remain employed at SMC for one year while he searched for another job. The plaintiff would continue to receive his salary and a bonus equivalent to the prior year's bonus. The plaintiff would also vest carried interest through December 2011 regardless of whether he departed sooner. In a letter dated February 12, 2013, Unger rejected the plaintiff's requests for additional compensation. Unger also wrote that the plaintiff had to provide written assurances that he would accept and honor all obligations of the Associates partnership agreement by countersigning the letter by February 22, 2013, if he wanted to be treated as a limited partner under that agreement. The plaintiff refused to countersign the letter or sign the Associates partnership agreement, and insisted that SMC honor a vesting schedule set forth in a response to an investor's request for information in 2006.
On June 23, 2014, the plaintiff commenced this action seeking damages from SMC, among others. After a nonjury trial, the Supreme Court held, inter alia, that the plaintiff failed to prove his first, second, and third causes of action, alleging breach of contract, quantum meruit, and unjust enrichment, respectively, insofar as asserted against SMC, and subsequently issued a judgment dismissing the amended complaint insofar as asserted against that defendant.
Where, as here, a case is tried without a jury, "'this Court's authority is as broad as that of the trial court, and this Court may render the judgment it finds warranted by the facts, taking into account in a close case the fact that the trial judge had the advantage of seeing the witnesses' and hearing the testimony" (West St. Props., LLC v American States Ins. Co., 150 AD3d 792, 794, quoting MJAC Realty Corp. v Boccio, 67 AD3d 870, 870 [internal quotation marks omitted]; see Finney v Morton, 170 AD3d 811). "'Where the trial court's findings of fact rest in large measure on considerations relating to the credibility of witnesses, deference is owed to the trial court's credibility determinations'" (Matter of Kassab v Kasab, 195 AD3d 832, 836, quoting Reingold v Bowins, 180 AD3d 722, 723).
The Supreme Court properly determined that the plaintiff failed to demonstrate that SMC breached the employment agreement. The court's decision is replete with instances where the plaintiff's testimony was determined to be incredible. The plaintiff argues that he is entitled to damages for SMC's failure to pay him carried interest from the Main Fund, a provision of the Associates partnership agreement, notwithstanding his choice not to execute that agreement. The court properly reasoned, based on the evidence adduced at trial, that the plaintiff's "decision not to sign the Associates Limited Partnership Agreement was deliberate and intentional, though his explanations are inconsistent and not credible. The testimony reflects that he wanted to establish his own unique deal for himself." Ultimately, the court concluded that the plaintiff failed to prove the existence of a valid agreement to modify the employment agreement. There is no basis upon which to disturb this finding, which was based primarily on the court's credibility determinations (see generally Matter of Kassab v Kasab, 195 AD3d at 832).
In addition, the Supreme Court properly concluded that the second and third causes of action, seeking recovery based on quantum meruit and unjust enrichment, are precluded by the written agreement between the plaintiff and SMC governing the same subject matter (see generally Concavage Mar. Constr., Inc. v Lou-Al-John Corp., 191 AD3d 843; Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 388).
MASTRO, J.P., MILLER, DUFFY and GENOVESI, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court