Matter of Rosbaugh v Town of Lodi (2025 NY Slip Op 01406)

Matter of Rosbaugh v Town of Lodi

2025 NY Slip Op 01406

Decided on March 13, 2025

Court of Appeals

Garcia, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 13, 2025

No. 27 
 

[*1]In the Matter of Lewis B.
Rosbaugh et al.,
 Respondents,
v
Town of Lodi,
 Appellant,
et al.,
 Respondent-Defendant.

Alan J. Pierce, for appellant.
Michael J. Hutter, for respondents.

GARCIA, J.

An unpaved road runs along one side of property owned by plaintiffs. In 2010, the Town of Lodi determined that low-hanging branches and dead or dying trees on plaintiffs' side of the road posed a hazard to travelers and needed to be cut or removed. Plaintiffs disagreed. Nevertheless, after apparently concluding that the trees were within the right of way, a tree service company hired by the Town cut down or trimmed fifty-five trees on plaintiffs' land. Plaintiffs commenced an action against the Town and the tree service company seeking, among other remedies, treble damages pursuant to RPAPL 861 (1). The parties agreed to binding arbitration and the arbitrator awarded plaintiffs damages, including treble the "stumpage value" of the damaged or destroyed trees. Supreme Court confirmed the arbitrator's award and a divided Appellate Division affirmed. The sole issue on appeal is whether treble damages under RPAPL 861 are punitive in nature, making them unavailable in a suit against a municipality. We hold that they are and reverse.
RPAPL 861 provides that
"[i]f any person, without the consent of the owner thereof, cuts, removes, injures or destroys . . . tree[s] or timber on the land of another . . . an action may be maintained [*2]against such person for treble the stumpage value of the tree or timber or two hundred fifty dollars per tree, or both and for any permanent and substantial damage caused to the land or the improvements thereon . . . ." (RPAPL 861 [1]).
"Stumpage value" is defined as "the current fair market value of a tree as it stands prior to the time of sale, cutting, or removal," and several valuation methods are specified in the statute (id. 861 [3]). Treble damages are the default measure for any recovery, but the statute also provides that
"if the defendant establishes by clear and convincing evidence, that when the defendant committed the violation, he or she had cause to believe the land was his or her own, or that he or she had an easement or right of way across such land which permitted such action, or he or she had a legal right to harvest such land, then he or she shall be liable for the stumpage value or two hundred fifty dollars per tree, or both . . . ." (id. 861 [2]).
In other words, the defendant's good faith "does not insulate that person from the imposition of statutory damages, but merely saves him or her from having to pay the plaintiff treble damages" (Halstead v Fournia, 160 AD3d 1178, 1182 [3d Dept 2018] [internal quotation marks and citations omitted]).
In the present case, an arborist assigned a value to each tree ranging from less than $100 to more than $5,000, arriving at a total stumpage value of $48,349. This amount was then trebled and $145,047 awarded against the Town. Plaintiffs were also awarded remedial measure costs and the value of pre-cut wood removed from the property; however, the arbitrator found no evidence of any reduction in the value of the property or of "mental anguish." The Town sought to vacate the award in Supreme Court, arguing that treble damages were punitive in nature and, as a matter of public policy, could not be imposed against a municipality. Supreme Court rejected that argument, holding that, because treble damages did not require a finding of "actual malice or a wanton, willful or reckless disregard for plaintiffs' rights," they were not punitive in nature, and confirmed the arbitrator's award.
In affirming that decision, the Appellate Division majority concluded that treble damages in RPAPL 861 were not punitive but were instead intended to capture elusive compensatory damages, including "the intrinsic value of a tree in its natural state—such as its environmental, historical and aesthetic qualities—which can be substantially greater to a landowner than the mere marketable lumber value" (225 AD3d 1314, 1315 [4th Dept 2024]). The two dissenting justices would have held that the treble damages were punitive and therefore that the arbitrator lacked authority to award those damages against the Town. According to the dissent, the "good faith" clause in RPAPL 861 (2) made clear that treble damages were not merely compensatory as it would be unreasonable to read the statute as intending that "owners of trees cut down by trespassers who harvest trees in good faith should not be made whole and instead receive only one-third of the market value of their trees" (see id. at 1317 [Whalen, P.J. and Lindley, J., dissenting]). The Town appealed to this Court as of right (see CPLR 5601 [a]).
It is well established that, "the State and its political subdivisions are not subject to punitive damages" (Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 386 [1987]). Consistent with this principle, the Court has held "that public funds [are] not . . . available, directly or indirectly, for the payment of damages beyond those actually suffered" because "the twin justifications for punitive damages — punishment and deterrence — are hardly advanced when applied to a governmental unit" (Sharapata v Town of Islip, 56 NY2d 332, 338 [1982]). "Treble damages are generally viewed as punitive" and to determine if that general view holds here, we look to the statute at issue to determine whether the legislature intended the treble damages to function punitively (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 385 [2020] [treble damages at issue were the functional equivalent of punitive damages because "actual damages are also available and there are no limitations on the amount . . . that may be trebled"]).
As Supreme Court below noted, recovery of punitive damages at common law generally requires a showing akin to "actual malice or a wanton, willful or reckless disregard of plaintiffs' rights," and no such requirement is found in RPAPL 861. Nevertheless, when considering a claim created by statute, "it is . . . within the province of the Legislature in authorizing the award of such [punitive or exemplary] damages to establish other and different criteria" (Welch v Mr. Christmas, 57 NY2d 143, 150 [1982] [internal citations omitted]) and so a statute may authorize [*3]punitive damages for less culpable conduct. In Welch, this Court cited RPAPL 861 as an example of a statute authorizing such damages based on different criteria than traditionally applied in an action at common law (see id.). While dictum in that case, the conclusion that the legislature intended the treble damages in RPAPL 861 to be punitive is correct.
The "good faith" provision in RPAPL 861 demonstrates the punitive nature of the treble damages available under the statute. "In contrast to compensatory damages, which are intended to redress the concrete loss that a plaintiff has suffered by reason of the defendant's wrongful conduct, punitive damages are essentially private fines levied by civil juries to punish reprehensible conduct, and deter its future occurrence" (Frankson v Brown & Williamson Tobacco Corp., 67 AD3d 213, 218-219 [2d Dept 2009], citing Cooper Industries, Inc. v Leatherman Tool Group, Inc., 532 US 424, 432 [2001] [compensatory damages "are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct," whereas punitive damages "operate as 'private fines' intended to punish the defendant and to deter future wrongdoing"]). As the dissent below asserted, it is unreasonable to read the statute in a way that allows the defendant's state of mind — a showing the defendant acted in good faith — to reduce a recovery merely intended to make the plaintiff whole. Rather, the plain reading of the text is that treble damages, punitive in nature, are mitigated by the good faith of the defendant.
The history of the statute also contradicts the notion that the treble damages provision is meant to compensate the owner for the "intrinsic value" of the tree outside any measure of stumpage "market value" (225 AD3d at 1315). Under the version of the statute in effect from 1963 until the current version was enacted in 2003, the plaintiff was authorized to state his or her "damages and demand judgment for treble the sum so stated" (former RPAPL 861 [2]). That prior version, allowing for broad damages claims, also set out a reduction based on good faith from treble to single damages, suggesting, as here, that treble damages were an additional penalty to deter knowing and intentional taking of timber (id. former 861 [2] [a]). In fact, the earliest predecessor statutes, enacted more than two centuries ago, contained provisions for treble damages with a corresponding good faith mechanism for reducing to single damages (see e.g. L 1805, ch 94, §§ 1, 2 [single damages if conduct engaged in by "mistake"]; 1813 Rev Laws of NY, 36th Sess, ch LVI, § XXIX [1 Van Ness & Woodworth rev at 525-526] [single damages if trespass was "casual or involuntary" or defendant had a good faith belief he or she owned the land]).
That approach carried over to the current version of RPAPL 861 enacted in 2003. Treble damages are generally intended as punitive, and treble the stumpage value is not less so, especially with a corresponding good-faith mechanism for reducing those damages. A consistent theme of punishment and deterrence runs throughout the statute's legislative history (see Halstead, 160 AD3d at 1181-1182 [reviewing legislative history for L 2003, ch 602]). For example, the Assistant Commissioner of the New York State Department of Environmental Conservation explained:
"Current penalties are not high enough to deter the illegal taking of timber . . . . This legislation, by increasing the penalties to allow for treble the stumpage value, will provide for greater deterrence for the knowing offender while at the same time promote more diligence and care on the part of legitimate timber harvesters to prevent inadvertent trespass and timber theft [and] this legislation will make it easier for timber theft victims to recover damages" (Letter from St Dept of Envtl Conservation, Sept 24, 2003, Bill Jacket, L 2003, ch 602 at 14).
In sum, the structure and the history of this statute show that the treble damages it authorizes are meant to punish those who do not act in good faith and are punitive. As a result, treble damages as provided for by RPAPL 861 may not be imposed against the Town (see Sharapata, 56 NY2d at 339).
Accordingly, the order of the Appellate Division insofar as appealed from should be reversed, with costs, and the petition to vacate the award granted in part in accordance with this opinion.
Order insofar as appealed from reversed, with costs, and petition to vacate the award granted in part in accordance with the opinion herein. Opinion by Judge Garcia.
Chief Judge Wilson and Judges Rivera, Singas, Cannataro, Troutman and Halligan concur.
Decided March 13, 2025