■ PINTER-ZWICKER ELECTRIC Co., INC., Appellant-Respondent, v ALLIANCE ELECTRIC, INC., Respondent-Appellant, and ZWICKER ELECTRIC Co., INC., Appellant-Respondent.—Order, Supreme Court, New York County (Francis N. Pecora, J.), entered October 10, 1989, which denied the motion of plaintiff Pinter-Zwicker Electric Co., Inc. (P-Z) and counterclaim defendant Zwicker Electric Co., Inc. (Zwicker) for summary judgment and for dismissal of the second counterclaim and granted the motion to the extent of dismissing the first, second, third and fourth affirmative defenses and the first and third counterclaims against P-Z, unanimously modified, on the law, to the extent of dismissing the second counterclaim and reinstating the second affirmative defense and third counterclaim against P-Z and otherwise affirmed, without costs.

P-Z, an electrical subcontractor on five construction projects in the Philadelphia area, seeks to recover under a 1984 agreement negotiated and executed in New York among P-Z, its parent, Zwicker, defendant Alliance Electric, Inc. (Alliance), and Alliance's principal George Leon. Pursuant to the agreement, Alliance took over completion of the five contracts and was to receive the balance of moneys due under them in return for $180,000 plus 3% of any price increase resulting from change orders and contract amendments, which 3% the parties agree is $98,953. The agreement was not an assignment, but a contractual obligation of Alliance to fulfill the subcontract on P-Z's behalf. Further, Alliance was to pay P-Z $50,000 for certain materials and equipment.

Subcontract payments were to be deposited in a joint account from which disbursements were to be made in the following priority: (1) labor, material and services to complete the five contracts; (2) overhead payment to Alliance for 18 months in the amount of $40,000; (3) payment of the $50,000 material and equipment item to P-Z; (4) payment of the $180,000 obligation to P-Z for the grant to Alliance of the right to complete the five subcontracts; (5) payment to P-Z of 3% of any change order price increases; and (6) payment to Alliance of any balance as Alliance's profit for completing the work. In the event the joint account failed to have sufficient

funds to make payment to P-Z for items 3, 4 and 5, Alliance would be liable for the balance.

It is undisputed that the joint account has only $14,000 in it and that payment of the aforesaid items has not been made to P-Z. This action, commenced in 1988, is for the sum of those items.

In its answer, Alliance asserted, as a second affirmative defense, breach of contract resulting from P-Z's failure to pursue damage delay claims, which would have funded the joint account, and, as a third affirmative defense, that the subcontracts were not completed in time through no fault of Alliance and, as a result, Alliance incurred additional expenses.

Alliance also asserted three counterclaims against P-Z and its parent company, Zwicker: (1) seeking unreimbursed overhead in the amount of $681,000, because the contracts took more than 18 months to complete (similar to the third affirmative defense); (2) seeking the same damages for unjust enrichment; and, (3) seeking $650,000 for the failure by P-Z and Zwicker to pursue the alleged damage delay claim on the subcontract involving the Temple University project (similar to the second affirmative defense).

Zwicker previously moved to dismiss the counterclaims for failure to state a cause of action and the IAS court dismissed the first and third counterclaims because no contract terms obligated Zwicker to cover Alliance's overhead costs caused by delay or to pursue delay claims. However, the court allowed the second counterclaim for unjust enrichment to remain against Zwicker.

P-Z and Zwicker then sought summary judgment dismissing the affirmative defenses and the second counterclaim against them and the first and third counterclaims against P-Z.

In opposition to the motion, Alliance contended that P-Z, while filing an extra work delay-damage claim in connection with the Temple University project, released such claim because the general contractor offered it a substantial electrical subcontract on a New York project as a condition for such release and that even though the claim was for over $1½ million, P-Z preferred this new contract as against its mere 3% interest in the extra work delay-damage claim.

In a disposition similar to its determination of Zwicker's prior motion, the IAS court granted P-Z dismissal of the affirmative defenses and the related first and third counterclaims. This left standing Alliance's unjust enrichment claim

in its second counterclaim against both P-Z and Zwicker for unreimbursed overhead because the project took longer to complete than the 18 months envisioned by the parties in the 1984 agreement. However, the contract specifically dealt with that subject and provided for overhead for only 18 months at $40,000 per month. There was no provision for any additional reimbursement for overhead. Thus, the contract being carefully detailed, it would be improper to imply the additional provision and the counterclaim should have been dismissed just as the third affirmative defense was dismissed (see, *Clark-Fitzpatrick, Inc. v Long Is. R. R. Co.,* 70 NY2d 382, 388-389).

On the other hand, the third counterclaim and related second affirmative defense against P-Z for failure to pursue the delay-damage claim should not have been dismissed because of Alliance's contention that the implied covenant of good faith and fair dealing was breached by P-Z in pursuing its own agenda in releasing the Temple University delay-damage claim. *(Van Valkenburgh, Nooger & Neville v Hayden Publ. Co.,* 30 NY2d 34, 45.) This is particularly so where the parties' relationship took on aspects of a joint venture to complete the subcontracts (see, *Meinhard v Salmon,* 249 NY 458).

While P-Z's claim to $328,953 is clear and undisputed, denial of summary judgment is proper until a determination with respect to the reasons for the claimed underfunding of the joint account, the only basis for Alliance's direct liability, which dispute is raised in the second affirmative defense concerning the Temple University delay-damage claim and the related third counterclaim, which seeks a substantially larger sum and is inextricably intertwined with the transaction underlying the complaint. *(See,* 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 3212.17.) Concur—Murphy, P. J., Kupferman, Milonas, Rosenberger and Ellerin, JJ.