(March 6, 2007)

■ ADELAIDE PRODUCTIONS, INC., et al., Respondents, v BKN INTERNATIONAL AG et al., Appellants. [834 NYS2d 3]—

Order, Supreme Court, New York County (Richard B. Lowe, III, J.), entered on or about May 27, 2005, which denied defendants' motion for leave to amend their answer to plead the statute of frauds as an affirmative defense, and granted plaintiffs' cross motion for costs and sanctions to the extent of referring the matter to a Special Referee to hear and report, unanimously modified, on the law and the facts, to deny the cross motion, and otherwise affirmed, without costs. Order, same court and Justice, entered September 21, 2005, which,

insofar as appealed from, denied defendants' motion for summary judgment dismissing the complaint, unanimously modified, on the law, to grant the motion to the extent of dismissing the first, second and fourth causes of action, and otherwise affirmed, without costs.

Plaintiffs Adelaide Productions, Inc. and ELP Communications (collectively, Adelaide/ELP) are part of the Sony group of entertainment companies and are engaged in the production of animated television programs for children. From September 1996 through January 2000, Adelaide/ELP entered into a series of licensing agreements (the Licensing Agreements) with BKN, Inc. (BKN), under which BKN was licensed to distribute and broadcast certain of Adelaide/ELP's programs.[1]

In the fall of 2000, BKN and defendant Allen Bohbot, who was then BKN's chief executive officer, began to negotiate a restructuring of BKN's relationship with Adelaide/ELP, in which it was contemplated that BKN's rights to distribute and broadcast Adelaide/ELP programming would be assigned to BKN's subsidiary, defendant BKN International AG (BKNIAG), a German corporation of which Bohbot was also chief executive officer. These negotiations culminated in the execution of a "Restructuring Agreement," dated March 30, 2001. In the preamble to the Restructuring Agreement, BKN acknowledged that it had an outstanding obligation to pay Adelaide/ELP licensing fees of $14.43 million ($8.775 million of which was past due), and that, upon Adelaide/ELP's delivery of 40 episodes of the program "Heavy Gear," BKN would owe Adelaide/ELP an additional $10 million, such obligations being referred to collectively as the "Outstanding Obligations." The Restructuring Agreement provided, among other things, that BKN would pay Adelaide/ELP $4 million of the Outstanding Obligations upon execution of the agreement, with the balance to be paid in 2002. At the same time, BKN, BKNIAG and Adelaide/ELP entered into a letter agreement, also dated March 30, 2001 (the Letter Agreement), under which it was agreed, among other things, that the Licensing Agreements were amended to provide as follows: "BKN shall have the right to assign the [Licensing Agreements] to BKNIAG, provided, however, BKN shall not be discharged of, and shall remain liable for, all of its duties, obligations and liabilities under the [Licensing Agreements], notwithstanding the assignment. Any such assignment must be in writing and must therein require that BKNIAG assume all of BKG's duties, obligations and liabilities arising under the [Licensing

---

1. BKN was subsequently renamed Durham Capital Holdings, Inc. For purposes of clarity, we refer to the entity as BKN at all times.

Agreements] *other than BKN's obligation to pay the Outstanding Obligations.* BKN shall promptly provide [Adelaide/ELP] with a fully executed copy of any such assignment." (Emphasis added.)

BKN made the initial $4 million payment required by the Restructuring Agreement, but thereafter failed to pay any of the $20.43 million balance, and also failed to air Adelaide/ELP's programs. While BKN had transferred a block of BKNIAG stock (which was traded on the Neuer Market in Frankfurt, Germany) to Adelaide/ELP to secure payment of part of the Outstanding Obligations, the Frankfurt market crashed in late 2001, causing the value of the BKNIAG stock to decline precipitously. Since declaring BKN in default of the Restructuring Agreement in December 2001, Adelaide/ELP has obtained a judgment for $20.43 million (before interest) against BKN in a separate action. That judgment has not been satisfied.

In this action, Adelaide/ELP is suing BKNIAG and Bohbot, asserting causes of action for fraud, unjust enrichment, breach of contract as alleged third-party beneficiaries, and (against BKNIAG only) breach of contract. After discovery, defendants moved for summary judgment dismissing the complaint, which relief was denied by the order entered September 21, 2005. We now modify this order to dismiss the causes of action for fraud, unjust enrichment, and breach of contract as alleged third-party beneficiaries (the first, second and fourth causes of action). We affirm the denial of the summary judgment motion solely as to the breach of contract claim against BKNIAG alone (the third cause of action).

We turn first to the first cause of action, for fraud. The theory of this claim is that Bohbot's and BKNIAG's alleged misrepresentations during the period from the September 2000 to March 2001 fraudulently induced Adelaide/ELP to forego taking immediate legal action to enforce its rights under the Licensing Agreements while BKN still had substantial assets. On this record, however, none of the misrepresentations alleged by Adelaide/ELP is actionable, as a matter of law.

The misrepresentation on which Adelaide/ELP places most emphasis is defendants' alleged failure, during the negotiation of the Restructuring and Letter Agreements, to disclose that BKN had already assigned BKNIAG its rights to Adelaide/ELP's programming by an agreement dated January 5, 2001 (the Assignment), under which BKN retained liability "for paying all [preexisting] obligations . . . under the [Licensing Agreements] for any guarantees, advances or similar fixed payments" (apparently including the Outstanding Obligations). Even if defendants

failed to disclose the Assignment, the nondisclosure would not be actionable, since Adelaide/ELP cannot prove that it was damaged in any way by the nondisclosure.[2] This is because the Assignment did not violate the requirements for an assignment of rights from BKN to BKNIAG on which the parties ultimately agreed in the Letter Agreement. As demonstrated by the above-quoted excerpt from the Letter Agreement, that document specifically provides that, in such a transaction, BKNIAG would *not* be required to assume "BKN's obligation to pay the Outstanding Obligations." Adelaide/ELP does not identify any other specific obligation under the Licensing Agreements that BKNIAG failed to assume under the terms of the Assignment that the Letter Agreement subsequently required it to assume.

Nor can the fraud claim be supported by the statement in Bohbot's letter to Adelaide/ELP, dated March 5, 2001, that BKN, at that time, had a "significant cash position" and "minimal debt." Adelaide/ELP, a sophisticated commercial entity, conducted due diligence in connection with the negotiation of the Restructuring and Letter Agreements, and a party's financial condition is a matter that can readily be explored through a due diligence investigation. Notably, Adelaide/ELP does not allege that, in the course of its due diligence review, it was provided with any false documentation or information concerning BKN's finances, or even that it requested such material. Where a sophisticated party has had an opportunity to conduct due diligence, it will not be permitted to predicate a fraud claim on vague oral representations that it made no effort to verify (*see e.g. Global Min. & Metals Corp. v Holme*, 35 AD3d 93, 100 [2006]; *Valassis Communications v Weimer*, 304 AD2d 448, 449 [2003]). Further, Adelaide/ELP's representatives testified that they understood during the negotiations that, after the contemplated restructuring was accomplished, BKN would be a holding company owning BKNIAG's stock, with virtually no other assets. Thus, the record establishes that Adelaide/ELP did not, in fact, rely on Bohbot's statement about BKN's cash posi-

---

**2.** We note that the record does not establish whether or not defendants concealed the Assignment from Adelaide/ELP while the negotiations were ongoing. In February 2001, Adelaide/ELP issued a due diligence document request to which the Assignment would have been responsive, but the record apparently does not contain any admissible evidence showing whether or not the Assignment was produced in response to this request. Representatives of Adelaide/ELP testified that they did not believe they saw the Assignment during the negotiations. Contrary to defendants' argument, the minutes of the December 2000 meeting of BKN's board of directors (which an Adelaide/ELP representative attended by telephone) do not establish as a matter of law that the transaction between BKN and BKNIAG approved at that meeting was the Assignment in question.

tion. Similarly nonactionable are the statement in Bohbot's letter of March 5, 2001 that BKN "will not renege on any portion of any promises on any documents for which it is signatory," and Bohbot's alleged oral statements to Adelaide/ELP that "he had always paid his bills, no one had ever gone unpaid." Such statements of general intent to perform one's contractual obligations are too vague to support a fraud claim (*see Ederer v Gursky*, 35 AD3d 166 [2006]), and, in any event, Adelaide/ELP points to no evidence substantiating its conclusory allegation that Bohbot did not intend to cause BKN to perform its contractual obligations at the time the letter in question was sent.

Finally, the statements of which Adelaide/ELP complains concerning Bohbot's control of BKN and the length of time he was anticipated to remain with BKN did not constitute actionable fraud. The statement in Bohbot's letter to Adelaide/ELP, dated March 27, 2001, that he (Bohbot) "personally carr[ied] 72% of the vote" at a BKN's shareholders meeting, when read in context, was simply an explanation of the reason the shareholders had voted to approve the Restructuring and Letter Agreements; it cannot reasonably be read as a representation that Bohbot would cause BKN to act favorably to Adelaide/ELP indefinitely. Contrary to Adelaide/ELP's further claim, there is no evidence in the record that Bohbot made any promise to Adelaide/ELP that he would "remain with BKN through 2002 to ensure that creditors, including plaintiffs, were dealt with fairly." Rather, the minutes of the December 2000 meeting of the BKN board of directors reflect a resolution to offer Bohbot an employment agreement for another two years and to grant him a bonus to induce him to stay on for that period. Adelaide/ELP points to no admissible evidence that Bohbot ever made any promise to Adelaide/ELP that he would continue to control BKN for any particular length of time. As matters subsequently developed, it appears that Bohbot resigned as BKN's chairman and CEO in May 2001, and that he ceased to be a BKN shareholder in December 2001.

Also without merit as a matter of law is Adelaide/ELP's second cause of action, for unjust enrichment. This claim is based on the allegation that, "[a]t Bohbot's direction, BKNIAG wrongfully acquired rights to plaintiff's television series, the possession of which has enriched defendants." It is well established, however, that an unjust enrichment claim is barred under the rule that "the existence of a valid contract governing the subject matter generally precludes recovery in quasi contract for events arising out of the same subject matter" (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 23 [2005], citing *Clark-*

*Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 388 [1987]; *see also Singer Asset Fin. Co., LLC v Melvin*, 33 AD3d 355, 358 [2006]). Here, the record establishes that the Letter Agreement of March 30, 2005—to which both Adelaide/ELP and BKNIAG were parties—governed BKNIAG's right to acquire the rights to Adelaide/ELP's television programs that had previously been licensed to BKN. Since Adelaide/ELP does not allege that BKNIAG's acquisition of the rights to the programs in question violated the Letter Agreement, BKNIAG's acquisition of those rights is not, in itself, actionable. We further note that, since it appears that BKNIAG has not exercised the rights to Adelaide/ELP's programs by airing them, it is difficult to see how BKNIAG could have been enriched by acquiring those rights.[3]

Defendants are also entitled to summary judgment dismissing the fourth cause of action, a claim for breach of contract asserted by Adelaide/ELP as a purported third-party beneficiary of the Assignment between BKN and BKNIAG. The Assignment, however, expressly excludes any implication that it was intended to benefit any third party. The Assignment provides: "Nothing in this Agreement shall be construed to give any benefit to any person or corporation or other entity, other than Seller [BKN] and Buyer [BKNIAG] and their respective successors and assigns." This provision, which could not be clearer, disposes of Adelaide/ELP's third-party beneficiary claim for breach of contract as a matter of law.

However, Adelaide/ELP's third cause of action, for breach of contract solely against BKNIAG, appears to raise triable issues. Again, Adelaide/ELP and BKNIAG are both parties to the Letter Agreement, under which BKNIAG agreed that it would not take an assignment of BKN's rights unless it also "assume[d] all of BKN's duties, obligations and liabilities arising under the [Licensing Agreements] *other than BKN's obligation to pay the Outstanding Obligations*" (emphasis added). While BKNIAG clearly cannot be held liable for the unpaid balance of the Outstanding Obligations under this provision, it may be held liable for BKN's other "duties, obligations and liabilities" under the Licensing Agreements. Among these are the contractual duty to indemnify Adelaide/ELP against consequential damages (such as liability to third parties) that may "aris[e] out of or in connection with any breach or claim of breach of any warranty, representation or undertaking made by [BKN] with respect to [the Licensing Agreements]." Adelaide/ELP alleges that it has

---

**3.** It appears that Adelaide/ELP's true complaint is not with the transfer of the rights to BKNIAG, but with BKN's lack of any resources with which to pay the $20.43 million balance of the Outstanding Obligations.

suffered damages by reason of BKN's failure to air at least one of the licensed programs ("Heavy Gear"), in that Adelaide/ELP has incurred, inter alia, liability to other licensees who had to be compensated when the program was not aired. Since there is at least a triable issue as to whether BKNIAG promised Adelaide/ELP that it would assume this indemnification obligation in the event it acquired the program rights, Adelaide/ELP may have a direct claim against BKNIAG under the Letter Agreement to enforce its indemnification rights under the Licensing Agreements.

Also before us is Supreme Court's order, entered on or about May 27, 2005, denying defendants' motion for leave to amend their answer to assert the statute of frauds as an additional affirmative defense. Our disposition of the appeal from the other order leaves only the third cause action at issue, and that claim, being based on a written contract (the Letter Agreement) signed by the party to be charged (BKNIAG), does not run afoul of the statute of frauds. Accordingly, we affirm the denial of the motion to amend the answer.

The order denying defendants' motion to amend the answer also granted Adelaide/ELP's cross motion for costs and sanctions for frivolous conduct under 22 NYCRR 130-1.1 (a) to the extent of referring the matter to a Special Referee to hear and report. We vacate this aspect of the order and deny the cross motion. Defendants' motion to add a statute-of-frauds defense, based on the theory that Adelaide/ELP's fraud cause of action is the equivalent of claim to recover under an oral guarantee, was not so utterly lacking in merit as to qualify as frivolous conduct within the meaning of part 130 of the Rules of the Chief Administrator. Concur—Mazzarelli, J.P., Friedman, Nardelli, Gonzalez and Catterson, JJ.