Kenneth **DRAYTON** and Florence Celestin, individually and on behalf of all others similarly situated, Plaintiffs,

v.

**METROPLUS HEALTH PLAN, INC.** and New York City Health and Hospitals Corporation, Defendants.

No. 10 Civ. 9686 (JSR).

United States District Court, S.D. New York.

May 16, 2011.

Molly Anne Brooks, Justin Mitchell Swartz, Melissa E. Pierre–Louis, Outten & Golden, LLP, New York, NY, for Plaintiffs.

Ashley Jean Hale, New York City Law Department, New York, NY, for Defendants.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

Plaintiffs Kenneth Drayton and Florence Celestin bring this putative class action against defendants MetroPlus Health Plan, Inc. ("MetroPlus") and New York City Health and Hospitals Corporation ("HHC") alleging that defendants failed to pay them overtime pay in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and New York Labor Law §§ 650 *et seq.* On March 7, 2011, defendants moved to dismiss the plaintiffs' claim arising under New York Labor Law on the basis that HHC and MetroPlus are "political subdivisions" of New York State, and are therefore exempt from the overtime provisions of that law. Having carefully considered the parties' written submissions and oral arguments, the Court, in a "bottom-line" Order signed on April 12, 2011, granted the motion. This Memorandum Order states the reasons for that ruling.

The pertinent allegations of plaintiffs' complaint, along with related matters of public record,[1] are as follows. HHC, a

1. It is "well established that a district court may rely on matters of public record in decid-

public benefit corporation established by the New York State Legislature, *see* N.Y. Unconsol. Law §§ 7381 *et seq.* (the "HHC Act"), operates a network of hospitals, diagnostic and treatment centers, long-term care facilities, and community clinics throughout New York City. HHC 2006 Report to the Community at 2, available at: http://www.nyc.gov/html/hhc/downloads/pdf/hhc-community-report.pdf. HHC facilities serve roughly 1.3 million patients annually, making HHC the largest municipal healthcare provider in the United States. *Id.* In 1969, upon finding that there was an "inadequacy and shortage of health facilities" in New York City, the State Legislature established HHC to "provi[de] and deliver[ ] ... comprehensive care and treatment of the ill and infirm, both physical and mental ... for the benefit of the people of the state of New York and of the city of New York." HHC Act § 7382. The Legislature emphasized that this mission was "vital to the protection and the promotion of the health, welfare and safety of the people of ... New York," and declared that HHC's mandate "constitutes the performance of an essential public and governmental function." *Id.* Accordingly, the HHC Act defines HHC employees as "public employees," *id.* § 7390(5) and HHC is represented by government counsel in actions before this Court. MetroPlus, a wholly-owned subsidiary of HHC, is a not-for-profit prepaid health services organization that contracts with state and local governments to offer low or no-cost health insurance to low-income residents of New York City who are eligible for Medicaid and other federally-subsidized health benefit programs. Complaint ("Compl.") ¶ 1–2.

Plaintiffs are former "marketing representatives" who worked for MetroPlus in New York City. Compl. ¶ 3. Marketing representatives assist eligible New Yorkers to enroll in MetroPlus health insurance plans by educating them about available health insurance options, helping them complete the necessary paperwork and collect the necessary documents to apply for insurance with MetroPlus, and verifying their eligibility therefor. Compl. ¶ 4. Plaintiffs contend that MetroPlus has a policy and practice of requiring plaintiffs and other marketing representatives to work beyond their scheduled 8 hour shifts, but not to pay them for the time they spend working in excess of the 40 hour workweek. Compl. ¶¶ 8, 24–25.

On the basis of the foregoing, plaintiffs allege that MetroPlus and HHC have willfully violated federal and New York State laws mandating that certain kinds of "employers" provide certain kinds of "employees" with overtime pay. New York Labor Law, however, expressly excludes from its definition of "employee" those persons employed "by a federal, state or municipal government or political subdivision thereof." N.Y. Lab. Law § 651(5); *see also* 12 N.Y.C.R.R. § 142–2.14. By contrast, the FLSA expressly includes "any individual employed by a ... political subdivision of a State" within its coverage. FLSA § 203(e)(2)(B). Defendants' sole contention on the instant motion, which seeks dismissal only of plaintiffs' claim arising under New York law, is that, as "political subdivisions" of the State of New York, they are exempt from the overtime wage requirements found in New York Labor Law. Resolution of this motion thus turns on whether or not HHC and MetroPlus are properly categorized as political subdivisions under New York Labor Law.

ing a motion to dismiss under rule 12(b)(6)." *Parks v. Town of Greenburgh,* 344 Fed.Appx. 654, 656 (2d Cir.2009).

Turning first to HHC, the Court notes that, under New York law, the fact that an entity is a public benefit corporation does not automatically render it a political subdivision. Instead, New York Courts engage in a "particularized inquiry into the nature of the [organization] and the statute claimed to be applicable to it," *Long Island R. Co. v. Long Island Lighting Co.*, 103 A.D.2d 156, 479 N.Y.S.2d 355, 361 (2d Dept.1984), "to determine whether—for the specific purpose at issue—the public benefit corporation . . . perform[s] an essential government function . . . [and therefore] should be treated like the State." *Clark–Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 387, 521 N.Y.S.2d 653, 516 N.E.2d 190 (2d Dept. 1987). Similarly, in determining whether an entity is a political subdivision under the New York Labor law, New York Courts must evaluate "the nature of the employing organization." *Faculty Student Ass'n of State Univ. of Oneonta, Inc. v. Ross*, 54 N.Y.2d 460, 463–64, 446 N.Y.S.2d 205, 430 N.E.2d 1258 (N.Y.1981).

In *Clark–Fitzpatrick*, the Second Department held that the Long Island Railroad (the "LIRR") serves "the essential public function . . . [of] providing commuter transportation" and thereby granted it the immunity from punitive damages enjoyed by political subdivisions under New York common law. *Id.* In so holding, the Second Department emphasized two attributes of the LIRR's structure and identity. First, the Court noted that it is a "public benefit corporation . . . [that] receives much of its funding from taxpayer revenues." *Id.* at 387–88, 521 N.Y.S.2d 653, 516 N.E.2d 190 (adding that "at the time this action was commenced, 49% of [the LIRR's] total expenses were financed from outside subsidies, most of which were derived from public sources."). Second, the Court examined the LIRR's operations in relation to the purposes articulated by the State Legislature in creating the

LIRR's parent entity, the Metro Transit Authority ("MTA")—*vis.*, to "preserv[e], strengthen[ ] and improve[ ] . . . [the] efficient and adequate transportation of commuters within the New York metropolitan area." Public Authorities Law § 1263, L. 1965, ch. 324 § 1 (the "MTA Act"). The Court found that "[a]s a subsidiary of the MTA, [the LIRR] obviously plays a critical role in implementing this legislative goal," *Clark–Fitzpatrick*, 70 N.Y.2d at 387, 521 N.Y.S.2d 653, 516 N.E.2d 190, which the State Legislature had declared to be "of vital importance to the . . . general welfare of the people of the New York metropolitan area" and therefore "an essential governmental function," MTA Act § 1. Accordingly, the Court determined that—in light of the statutorily-determined public nature of the LIRR's operations, as well as the public source of much of its funding— the LIRR was properly categorized as a political subdivision under New York common law.

Applying the *Clark–Fitzpatrick* Court's analysis to the instant motion, the Court concludes that HHC is properly considered a political subdivision under New York Labor Law. As an initial matter, the HHC Act, in language that is similar to that used in the MTA Act, expressly states that the State legislature constituted HHC to perform the "essential public and governmental function . . . [of] provid[ing] and deliver[ing] comprehensive care and treatment of the ill and inform," which "is in all respects for the benefit of the people of . . . New York." MTA Act § 7382. Moreover, like the LIRR, HHC receives a substantial amount of financial support from public sources of funding. *Id.* § 7386 (providing for guaranteed public funding of HHC); *see also* HHC 2009 Budget & Financial Plan, dated 4/27/2010, available at http://www.nyc.gov/html/hhc/downloads/pdf/hhc-paris-2009-2014.pdf (noting that, in

2009, HHC received over $348 million in grants and subsidies from the State and City of New York).

More broadly, the overwhelming thrust of New York and federal case law establishes that HHC is considered a governmental entity and political subdivision in a wide variety of contexts. For example, HHC is not covered by the National Labor Relations Act, 29 U.S.C. §§ 151 *et seq.* ("NLRA"), because it has been deemed a political subdivision of the State of New York for purposes of that statute. *See Muhlrad v. Mitchell,* 1997 WL 182614 *3–4 (S.D.N.Y. April 14, 1997). Rather, HHC employees enjoy the protections and obligations of New York's Civil Service Law, §§ 200 *et seq.,* which was enacted by the State legislature to "promote harmonious and cooperative relationships between government and its employees." *See id.* § 200; *see also Szucs v. Committee of Interns and Residents,* 2001 U.S. Dist. LEXIS 1113 (S.D.N.Y. Feb. 9, 2011). Similarly, HHC is subject to the New York City Collective Bargaining Law, which only applies to public sector New York City employees, *see* N.Y. Admin. Code § 12–303(g) (defining HHC as a "public employer"), and section 50 of the New York Workers' Compensation Law, which applies to certain municipalities and "political subdivision[s]." *See* Supplemental Declaration of Ashley Hale, dated March

28, 2011 at Ex. H. In another example, the New York Court of Appeals has refused to allow HHC to sublease a hospital under its administration to a private entity because "the [HHC Act] clearly indicates that the municipal hospitals would remain a governmental responsibility and would be operated by HHC," and so to sublease the hospital would therefore impermissibly transfer "the performance of an essential public and governmental function to the private sector." *Council of the City of New York v. Giuliani,* 93 N.Y.2d 60, 69–70, 687 N.Y.S.2d 609, 710 N.E.2d 255 (1999). And these are but examples.[2]

Accordingly, while there is no squarely controlling New York judicial decision, the Court concludes that New York courts are overwhelmingly likely to hold that HHC is a political subdivision for purposes of New York Labor Law. Indeed, given the innumerable situations under federal and New York law in which HHC has been deemed a governmental entity, to hold otherwise would be to incongruously carve out an isolated area of the law in which HHC is not considered a governmental entity.

■ Turning to MetroPlus, the Court first notes that, while MetroPlus is a wholly owned subsidiary of HHC, *see* Declaration of Ashley Hale, dated March 7, 2011 ("Hale Decl.") at Ex. A (MetroPlus Certificate of Incorporation stating that its "sole

---

**2.** In addition to those examples discussed above: (1) HHC has been held exempt from antitrust liability pursuant to the state action doctrine, *see Daniel v. Am. Bd. of Emergency Med.,* 988 F.Supp. 127, 185 (W.D.N.Y.1997); (2) As "public servants" under New York Penal Law § 10.00(15)(a), HHC employees can be charged with violating the "Official Misconduct" provisions of New York Penal Law § 195.00, *see, e.g., People v. Abranko,* 157 Misc.2d 972, 599 N.Y.S.2d 447 (N.Y.City Crim.Ct.1993); (3) HHC is a governmental entity for purposes of New York's Freedom of Information Law, *see M. Farbman & Sons, Inc. v. New York City Health & Hospitals*

*Corp.,* 62 N.Y.2d 75, 476 N.Y.S.2d 69, 464 N.E.2d 437 (1984), which was enacted to effectuate "[t]he people's right to know the process of governmental decision-making," *see* Public Officers Law § 84; and (4) Like New York governmental entities, HHC is governed by notice of claim provisions, *see* HHC Act § 7401(2), which were enacted by the State Legislature to impose "limitations on time and procedure for maintaining actions against the government." *Bender v. New York City Health & Hospitals Corp.,* 38 N.Y.2d 662, 667, 382 N.Y.S.2d 18, 345 N.E.2d 561 (N.Y. 1976).

member ... shall be [HHC]"), this fact alone is not sufficient for MetroPlus to assume HHC's status as a political subdivision and governmental entity. *See Faculty Student Ass'n of State Univ. of Oneonta, Inc. v. Ross*, 54 N.Y.2d 460, 463–64, 446 N.Y.S.2d 205, 430 N.E.2d 1258 (1981) (holding that a faculty-student organization is not a political subdivision, even though it was "a mere appendage" of a public university). Instead, in assessing whether a subsidiary of a political subdivision assumes like status under New York law, New York Courts look to the functions and purposes of the parent entity, as articulated in the parent entity's constitutive statute, and evaluate whether they align with the functions and purposes of the subsidiary in question. *See Clark–Fitzpatrick*, 70 N.Y.2d at 387–88, 521 N.Y.S.2d 653, 516 N.E.2d 190.

■ MetroPlus is a public benefit corporation created pursuant to the HHC Act for the same public purposes as HHC, *i.e.*, to further "the provision and delivery of comprehensive [medical] care and treatment" to all New York City residents. HHC Act § 7382. MetroPlus' bylaws state that its corporate purposes are "[t]o provide and deliver high quality, dignified and comprehensive health care and treatment ...," [t]o extend equally to all those served, health services of a high quality, in an atmosphere of human care and respect," "[t]o focus on the need for preventive primary care health services," and "[t]o operate in a manner consistent with the goals and objectives of [HHC] and its mission to serve the people of New York City." Hale Decl. Ex. B. Moreover, the mechanism by which MetroPlus seeks to effectuate these purposes—by providing low or no-cost health insurance to predominantly low-income residents of New York who qualify for federal health care subsidies—is a critical complement to HHC's core operations, which focus on the actual delivery of health care services to those

same communities of low-income New York residents. Given that MetroPlus is a wholly owned subsidiary of HHC, formed and operated to further the same public purposes, the Court concludes that MetroPlus is also properly classified as political subdivision under New York Labor Law.

For the foregoing reasons, the Court hereby reconfirms its Order of April 12, 2011 granting defendants' motion in its entirety, and, consequently, dismisses plaintiffs' claim arising under New York Labor Law with prejudice. The Clerk of the Court is directed to close document number 10 on the docket of this case.

SO ORDERED.