Frontier Ins. Co. v Merritt & McKenzie, Inc. (2018 NY Slip Op 01517)





Frontier Ins. Co. v Merritt & McKenzie, Inc.


2018 NY Slip Op 01517


Decided on March 8, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 8, 2018

524078

[*1]FRONTIER INSURANCE COMPANY, in Liquidation, Appellant,
v
MERRITT & McKENZIE, INC., Respondent.

Calendar Date: January 9, 2018

Before: Garry, P.J., Clark, Mulvey, Aarons and Pritzker, JJ.


The Copeland Law Firm, LLC, Atlanta, Georgia (James W. Copeland, admitted pro hac vice) and Victor J. D'Angelo, New York Liquidation Bureau, New York City, for appellant.
HoganWillig, PLLC, Amherst (Robert W. Michalak of counsel), for respondent.


Mulvey, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the Supreme Court (Meddaugh, J.), entered January 26, 2016 in Sullivan County, upon a decision of the court in favor of defendant.
Plaintiff, an insurance company, entered into an agency agreement with defendant in 1994 whereby defendant agreed to act as plaintiff's agent for the purpose of procuring clients to whom plaintiff could furnish surety bonds. The following year, defendant submitted two bond applications to plaintiff requesting that plaintiff authorize the execution of performance and payment bonds for construction of a Days Inn and a Holiday Inn by Norwest Contracting, Inc. Plaintiff thereafter authorized defendant to
execute, on its behalf, performance and payment bonds for both projects, and such bonds were executed in March 1995.
In 1996, after suffering bond losses in connection with the two hotel projects, plaintiff commenced the instant action sounding in breach of contract, breach of fiduciary duty, negligence, constructive fraud and indemnification [FN1]. Following joinder of issue and extensive discovery, Supreme Court denied plaintiff's motion for partial summary judgment in its favor and defendant's cross motion for summary judgment dismissing the complaint. At the ensuing bench [*2]trial, plaintiff propounded two distinct theories of liability upon which its various claims rested. First, plaintiff asserted that defendant violated its obligations under the agency agreement by failing to provide any financial background information pertaining to Charles Shepherd, Norwest's vice-president of business development, in its bond applications (hereinafter the Shepherd theory). Second, plaintiff claimed that defendant failed to disclose certain information that it learned from Michael Berguin, Norwest's vice- president, about Norwest's alleged questionable business practices (hereinafter the Berguin theory). Following the completion of trial, Supreme Court issued a decision and order dismissing plaintiff's claims in their entirety. In so doing, the court declined to consider the evidence submitted by plaintiff in support of the Shepherd theory, reasoning that its previous determination, at the summary judgment stage, that such theory rested upon "new and fundamentally different claims" than those pleaded in the complaint constituted law of the case. To the extent that plaintiff's claims were grounded upon the Berguin theory, the court found that they were subject to dismissal due to a failure of proof. This appeal by plaintiff ensued.
Plaintiff, as limited by its brief, challenges only that part of the verdict as found defendant not liable under the Shepherd theory [FN2]. In that regard, the parties first debate whether Supreme Court correctly applied the doctrine of law of the case to preclude consideration of the Shepherd theory as a basis for liability. That issue need not detain us, however, as "this Court is neither bound nor restricted by that doctrine" (People v Laughing, 113 AD3d 956, 957 [2014]; see Matter of Joy v Kutzuk, 99 AD3d 1049, 1050 [2012], lv denied 20 NY3d 856 [2013]; Matter of Jonathan M., 61 AD3d 1374, 1375 [2009]). We therefore begin by addressing the merits of the underlying substantive issue — that is, whether the Shepherd theory, as presented at trial, falls within the scope of the complaint.
While the facts underlying the Shepherd theory certainly could have been pleaded with more specificity, "a[ny] variance between the pleadings and the proof may be disregarded unless it can be said to have misled an adversary and occasioned prejudice" (Hummel v Vicaretti, 152 AD2d 779, 780 [1989] [internal quotation marks and citation omitted], lv dismissed 75 NY2d 809 [1990]; accord Anderson v Dainack, 39 AD3d 1065, 1068 [2007]; see Fried v Seippel, 80 NY2d 32, 42 [1992]; LaForte v Tiedemann, 41 AD3d 1191, 1192 [2007]). Here, the Shepherd theory "necessarily flows from the information conveyed in the pleadings" (Boyer v Kamthan, 130 AD3d 1176, 1178 [2015]; see Sherry v North Colonie Cent. School Dist., 39 AD3d 986, 991 [2007]; Van Derzee v Knight-Ridder Broadcasting, 185 AD2d 1011, 1011 [1992]) and was fully articulated and argued as a basis for a potential finding of liability in defendant's cross motion for summary judgment (see Fried v Seippel, 80 NY2d at 42; Talcott v Zurenda, 48 AD3d 989, 991 [2008]). Moreover, the case was tried, in part, on that very theory, leading to the inescapable conclusion that "[t]he [action] was conducted in the same manner as it would have been had the complaint been more specific" (Hummel v Vicaretti, 152 AD2d at 781). Thus, it is readily apparent that defendant was neither prejudiced nor surprised by plaintiff's failure to plead the [*3]Shepherd theory with more specificity.
Nevertheless, we find that the various causes of action predicated upon the Shepherd theory fail for other reasons. "'A simple breach of contract claim is not to be considered a tort unless a legal duty independent of the contract itself has been violated . . ., which legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract'" (Torok v Moore's Flatwork & Founds., LLC, 106 AD3d 1421, 1422 [2013], quoting Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 389 [1987] [brackets omitted]). Here, plaintiff's negligence claim is based upon the same alleged wrongful conduct as the breach of contract claim. Absent any special relationship or legal duty aside from their contractual relationship, this cause of action was duplicative of the breach of contract cause of action (see Muncil v Widmir Inn Rest. Corp., 155 AD3d 1402, 1404-1405 [2017]; Sutton v Hafner Valuation Group, Inc., 115 AD3d 1039, 1042 [2014]; Torok v Moore's Flatwork & Founds., LLC, 106 AD3d at 1422). Plaintiff's breach of fiduciary duty and breach of contract causes of action, which are based upon the same facts and theories and seek identical damages, are likewise duplicative (see Muncil v Widmir Inn Rest. Corp., 155 AD3d at 1405; NYAHSA Servs., Inc., Self-Ins. Trust v Recco Home Care Servs., Inc., 141 AD3d 792, 794 [2016]; Brooks v Key Trust Co. N.A., 26 AD3d 628, 630 [2006], lv dismissed 6 NY3d 891 [2006]).
To prevail on each of its remaining causes of action, plaintiff was required to prove that defendant's conduct was the direct and proximate cause of its bond losses (see Stein v Security Mut. Ins. Co., 38 AD3d 977, 979 [2007]; Edwards v International Bus. Machs. Corp., 174 AD2d 863, 865 [1991]; Drummer v Valeron Corp., 154 AD2d 897, 897 [1989], lv denied 75 NY2d 705 [1990]). "In this effort, plaintiff was not obligated to show that no other plausible causes existed, but [it] was required to prove that any alternative causes were sufficiently remote to permit the factfinder to base a determination in [its] favor on logical inferences from the evidence rather than speculation" (Brightman v Hackett, 81 AD3d 1200, 1201 [2011] [citations omitted]; see Costello v Pizzeria Uno of Albany, Inc., 139 AD3d 1336, 1338 [2016]). Upon our review of this nonjury trial verdict, we "independently review[] the probative weight of the evidence, together with the reasonable inferences that may be drawn therefrom, and grant[] the judgment warranted by the record while according due deference to the trial court's factual findings and credibility determinations" (Latham Land I LLC v TGI Friday's Inc., 124 AD3d 957, 958 [2015] [internal quotation marks and citations omitted]; see Davis v CEC, Inc., 135 AD3d 1049, 1050 [2016], lv denied 27 NY3d 904 [2016]).
The Shepherd theory was predicated on defendant's failure to provide plaintiff with any financial background information pertaining to Shepherd — namely, the fact that he had prior surety losses, a prior bankruptcy and was involved in pending litigation — in connection with the bond applications submitted for the two Norwest projects. The evidence adduced at trial overwhelmingly establishes, however, that it was plaintiff's own actions — rather than any omissions on the part of defendant — that proximately caused the bond losses at issue in this action (see Stein v Security Mut. Ins. Co., 38 AD3d at 979; New Horizons Amusement Enters. v Zullo, 301 AD2d 825, 827 [2003]). To be sure, the agency agreement imposed several duties upon defendant, including the obligation to follow any applicable underwriting guide and other instructions given by plaintiff and its employees. Plaintiff's underwriting guide, which was provided to defendant shortly after the execution of the agency agreement, set forth the documents that an agent was required to gather in order to provide plaintiff with a completed bond application, including financial statements, contractor questionnaires and work-on-hand reports. Yet, as Supreme Court aptly recognized in its analysis of the Berguin theory, it was plaintiff's underwriting department that was solely responsible for authorizing the execution of bonds on Norwest's behalf and, despite incomplete information from defendant in connection [*4]with the bond applications for the two hotel projects at issue, plaintiff nevertheless authorized the execution of those bonds. Notably, James Lambert, one of plaintiff's underwriters during the relevant time, admitted that he requested updated documents and financial information pertaining to Shepherd in October 1994 — prior to the issuance of the subject bonds — and that he continued to authorize the execution of bonds to Norwest despite never receiving such information. Indeed, following a 1995 internal audit concerning its underwriting of the Norwest bonds, which took place prior to any bond claim activity and was based on the information that it had or did not have in its file, plaintiff determined that it should not have underwritten and approved surety bonds for Norwest.
Moreover, any conclusion that plaintiff's bond losses were caused by defendant's failure to disclose financial information pertaining to Shepherd would be based on pure speculation. Critically, Lambert testified that no policy or written document existed that instructed plaintiff's underwriters in their underwriting of bond applications submitted by agents. Rather, as Lambert explained, plaintiff's underwriting policy "changed month to month, day to day, week to week." To that end, Lambert described plaintiff's underwriting process as "a yellow light" policy that empowered each underwriter to make individualized determinations with regard to authorizing bond applications, including the authority to override any of plaintiff's policies. Reflective of this flexible policy, Lambert himself noted that he "gave no credit to the personal financial statement equities" of Norwest, instead considering only the corporation's financial documents as well as the fact that a larger contractor had taken it as a mentee. Under these circumstances, it simply cannot be said that defendant's conduct was the proximate cause of plaintiff's losses (see Schroeder v State of New York, 145 AD3d 1204, 1206 [2016], lv denied 29 NY3d 914 [2017]; Stein v Security Mut. Ins. Co., 38 AD3d at 979; compare American Motorists Ins. Co. v Keep Servs., Inc., 63 AD3d 865, 866-867 [2009], lv denied 13 NY3d 710 [2009]). In light of our determination, the parties' remaining contentions have been rendered academic.
Garry, P.J., Clark, Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed, with costs.



Footnotes

Footnote 1: Plaintiff subsequently withdrew its actual fraud and punitive damages causes of action.

Footnote 2: To the extent that plaintiff's constructive fraud claim relates to the Shepherd theory, plaintiff has likewise failed to raise any issue in its brief with respect thereto. Accordingly, we deem any arguments pertaining to this claim, as well as the Berguin theory as a whole, to be abandoned (see Pearce v Joint Bd. of Directors of Erie-Wyoming County Soil Conservation Dist., 153 AD3d 1635, 1636 [2017]; Ivory v International Bus. Machines Corp., 116 AD3d 121, 126 n 2 [2014], lv denied 23 NY3d 903 [2014]).